## Kirby, et al. v. Hulette, et al.

(Decided February 23, 1917.)

### Appeal from Madison Circuit Court.

1. Deeds—"Heirs of His Body Forever"—Construction.—The words "heirs of his body forever," in a deed create by the common law an estate tail, which the statute converts into a fee, unless from the entire deed it must be concluded that the words were used in a sense other than their legal signification.

2. Appeal and Error—Evidence—Waiver of Objection to in Trial Court.—Where, in the trial court, no exceptions or objections are made to the incompetency of evidence, upon appeal it is presumed that the parties waived such objections as might have been made to it upon the ground of incompetency.

3. Deeds—Delivery.—The delivery and acceptance of a deed are as necessary to its validity as the signature of the grantor.

4. Deeds—Delivery.—The delivery of a deed is the act which divests the grantor of title in the property, which is the subject of the deed, and until a delivery, the title does not pass.

5. Deeds—Delivery—Intention.—An essential element in both actual and constructive deliveries of deeds is the intention on the part of the grantor to make the delivery and thereby to vest the title of the property in the grantee.

6. Deeds—Delivery.—A deed may be delivered to a third person to be delivered to a grantee at the death of the grantor, and it will

pass the title, if then accepted by the grantee, whose acceptance will relate back to the delivery to a third person for him, and will be a valid deed as between the parties and their privies.

7. Deeds—Delivery—Rule as to.—An established rule to determine whether there has been a delivery of a deed, when the grantor delivers it to a third person to be delivered to the grantee at the death of the grantor, is, if the grantor intended to part with all power and control over the deed, and reserved no right to recall it, it is a delivery; but if the grantor reserves any control over the instrument or power to recall it, it is not a delivery.

8. Deeds.—If a deed does not pass a present interest in the property, which is the subject of the deed, the deed is ineffectual, as it can not do the office of a will.

9. Deeds—Delivery—Acceptance.—When a grantor delivers a deed to a third person, to be delivered to the grantee at the death of the grantor, and parts with all control or power to recall the deed, and it is delivered to the grantee at the death of the grantor and accepted by him, the transaction may be construed as passing the title to the grantee at the delivery of the deed to the third person for him, and a reservation by the grantor of the use and possession of the property during his lifetime.

J. P. HOBSON & SON for appellants.

BURNAM & BURNAM and J. J. GREENLEAF for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellants, James Kirby, and Reuben Kirby, Jr., claim ownership of a farm of about two hundred acres, near Berea, Ky., under a deed from their father and grandfather, Reuben Kirby. Reuben Kirby died on April 15th, 1915. He left surviving him four daughters and three sons. Reuben Kirby, Jr., was a son of a deceased son of Reuben Kirby. The sons and daughters, other than the appellant, James Kirby, instituted this action, by which they sought to have adjudged the deed from their father to the appellants annulled and set aside, and the land sold and the proceeds divided between them as though the deed had never been made. The grounds upon which the action was based are the contentions:

First: That Reuben Kirby owned only a life estate in the lands, and the remainder was jointly owned by the plaintiffs and defendants, and for that reason the deed did not convey title to anything more than his life estate, which terminated with his death, although it purported to convey the fee in the land.

Second: There was never any delivery of the deed by the grantor to the grantees.

Third: The execution of the deed was procured by the undue influence of the grantees exerted upon the grantor for the purpose of procuring its execution.

After the case had been prepared, it was submitted and tried, and the chancellor adjudged that the deed was void and of no effect, and that it be set aside and the land sold and the proceeds divided among the heirs of Reuben Kirby, and from this judgment James Kirby and Reuben Kirby, Jr., who were the grantees in the deed, have appealed to this court. The grounds upon which the controversy is based will be considered in their order.

(a)   The lands were devised to the grantor by the will of Elisha Kirby, the grandfather. The devise was made in the following words:

"I further will and devise to my said grandson, Reuben Kirby, at the death of my wife, if she survives me, if not then at my death, the whole of the said tract of land of about two hundred acres of land, on which I now live, and the whole of the personal property, choses in action and which may be on hand at the death of my wife in case she survives me, and if she should not survive me, then at my death, to him and the heirs of his body, forever. But should my said grandson, Reuben Kirby, die without issue, then I will and devise the estate herein devised to him, to the legitimate children and heirs of my said son, Jesse Kirby, deceased."

A very little time needs to be spent with the contention that the above language invested Reuben Kirby with a life estate, only, in the lands, with the remainder to his children or heirs. He did not die without issue, and hence the condition upon which his title might have been defeated, is eliminated. Then, there is nothing left, except to determine the meaning to be attributed to the phrase, "and the heirs of his body, forever." When the will is considered as a whole, it is apparent that the above quoted words, "heirs of his body," are used in their strict legal signification, and, as such, are words of limitation and not of purchase. By the common law, they would have created an estate tail, which is converted into a fee by our statute, section 2343, Ky. Stats. Such construction must be given to them, unless from a consideration of the entire will it appears that the testator used the words in a sense other than their technical, legal signification. The words, "heirs of the body," have uniformly been held to be words of limitation and to create

an estate tail, which the statute converts into a fee, unless there is something else in the instrument creating the estate, from which it must be concluded that the words were used in a sense different from their legal meaning, Belcher, et al. v. Ramey, et al., 173 Ky. 784; Pelphrey v. Williams, 142 Ky. 485; Big Sandy Co. v. Childers, 148 Ky. 527; Jones v. Mason, 21 R. 842; Hall v. Moore, 32 R. 56; Handy v. Harris, 32 R. 224; Prewitt v. Holland, 92 Ky. 641; Davis v. Davis, 23 R. 1132; McGinnis v. McGinnis, 16 R. 598; True v. Nichols, 2 Duvall, 547; Prescott's Heirs v. Prescott's Heirs, 10 B. M. 56; Mitchell v. Simpson, 88 Ky. 125; Dotson v. Kentland C. & C. Co., 150 Ky. 60; Morehead v. Gibson, 168 Ky. 102; Senters v. Big Sandy Co., 149 Ky. 11; Foster v. Shreve, 69 Ky. 684; Howard v. Sebastian, 143 Ky. 237; Duncan v. Medley, 160 Ky. 684; American National Bank v. Madison, 144 Ky. 152; Lawson, et al. v. Todd, et al., 129 Ky. 132; Bonnycastle v. Lilly, 153 Ky. 834; Morgan v. Dillihay, 8 Bush 434; Johnson v. Johnson, 2 Met. 333; Lockland v. Downing, 11 B. M. 32; Fischer v. Stoepler, 152 Ky. 318.

(b)   Before entering upon the discussion of the second contention of appellees, that there was not a delivery of the deed to the appellants by the grantor, and for that reason the title did not pass from him to them, it is necessary to say that much of the evidence given by both appellees and appellants was not competent, if seasonable objection had been made, but a stipulation was entered into between the parties, that the necessity of formal objections being filed to the competency of the evidence was waived, and that the court would consider objections suggested in the argument, and the rulings on such objections should be embodied in a written order entered, with the approval of the court, at the time of the entry of the final judgment. No such order having been entered and the record failing to disclose that any objections were made to any of the evidence, it must be presumed that the parties waived objections to the competency of any of the evidence.

(c)   The facts in proof, which shed any light upon whether or not the deed was delivered so as to pass title from Reuben Kirby, whom we will hereafter call the grantor, are substantially as follows:

The grantor was eighty-one years of age at the time of his death, and had lived during his entire life upon the farm in controversy. He left between five hundred

and six hundred dollars' worth of personal property at his death, but, after the payment of his debts, there was left for distribution about thirty-five dollars to the heir, only. The farm was reasonably worth eight thousand and five hundred dollars. The daughters resided in and near Berea, with their families, but were all very poor, but the most amicable relations had always existed between Reuben Kirby and all of his children. James Kirby lived upon the farm with his father, having married the widow of his deceased brother, Stephen, and Reuben Kirby, Jr., was his stepson. James Kirby had seven children of his own, all of whom were reared upon the farm and from its profits. Reuben Kirby, Jr., resided there with the grantor until the year 1909 or 1910. When he was about fifteen years of age he went to the state of Illinois and has since that time resided for the greater portion of the time in Illinois and Ohio, and was an infant at the time of the making of the deed in controversy. The wife of Reuben Kirby died in the year 1908. In May, 1909, Reuben Kirby became sick with a disease, which one physician called a blood disease and the other pneumonia, and went to the home of one of his daughters in Berea. By the advice of a physician, he was carried to a hospital in Berea, where he was confined for about thirty days. On the 9th day of June, 1909, James Kirby furnished to one Gay, who was the cashier of a bank and a notary public, the deed under which Elisha Kirby, the devisor of the grantor, had held the land, and which contained a description of it, and testifies that he informed Gay, that his father wanted him to come to the hospital and do some writing for him. Thereupon, Gay, from information, which he was obliged to have received from James Kirby, prepared a deed from Reuben Kirby to the appellants, the consideration of which was one dollar and the love and affection, which the grantor bore to the appellants, and which purported to convey the lands to appellants. He went to the hospital with this deed and testifies that the grantor there informed him of his purpose to convey the land to the appellants, and signed and acknowledged the deed. Two nurses at the hospital were then called upon to subscribe their names upon the deed as witnesses thereto, which they did. The appellant, James Kirby, testifies that he was not present when this was done and in this he is corroborated by Gay, but the two nurses testify that James Kirby was present. The grantor directed

Gay to keep the deed until he called for it or in the event of his death to give it to James Kirby or Reuben Kirby, Jr. Thereafter, Gay kept the deed in his custody until the day preceding the death of the grantor, which occurred about six years afterward. About ten days after the signing and acknowledgment of the deed, the grantor left the hospital and went to the home of his daughter in Berea, and remained there until the setting in of the following winter, when he returned to his farm. Between the time of his illness and the time of his death, Gay testifies that on two or three occasions the grantor inquired of him if he still had the deed in his possession, and Dr. Cornelius testifies that on one or more occasions the grantor expressed his intention to him to give the land to the grantees in the deed, and at one time said to him, that the witnesses to the deed had removed from the county and that he wanted some witnesses to it, who lived in Berea, and asked him, if he was willing to become a witness to the deed, which the physician assented to. Two of the daughters testify that they having heard of the deed or "will," as they term it, inquired of their father in reference to it, saying to him, that they had heard, that he had given everything he had to James Kirby, and that, he said that he had not given anything to James Kirby, or that if he had done so he did not know it. Shortly previous to March 15th, 1915, Reuben Kirby became sick and bedfast with his last illness. On the date mentioned James Kirby requested Gay to go to his father's home and take the deed with him, and to read it to his father; that the witnesses to it had removed from the county and that his father wanted to have it witnessed by other witnesses. James Kirby, also, secured the presence of Dr. Cornelius and Mr. Isaacs. He accompanied them to the presence of his father and then went out of the room or at least was not in the room when the transaction, hereafter related, took place. The three witnesses do not entirely agree as to what took place when they conferred with Reuben Kirby, but from their statements it appears that the grantor expressed a desire to them to have the deed re-witnessed, or as they term it, "reaffirmed" or "reinforced." The deed was read over to him and the grantor, stating that he understood its contents, said that he wanted it to "stand" and desired the parties present to witness it, which they undertook to do by placing their names on the envelope, which contained the deed **and**

placing the date of their signatures thereon. They testify
that in the conversation the grantor said, that he pur-
posed to give the land to James Kirby and Reuben Kirby,
Jr., and that the deed was just as he wanted it. Dr.
Cornelius inquired of him if he wanted to make a will or
to have some additional writings, and he said that he did
not, that he would attend to that later, and among other
things said that there were some horses there, which be-
longed to Reuben Kirby, Jr., but that the parties, pre-
sumably his other heirs, understood that. Gay retained
the possession of the deed, and in fact it does not appear
that it was ever out of his hands, and he testifies that he
has no recollection of any directions, which the grantor
at that time gave to him in reference to it, but the under-
standing received by him from what transpired was, that
he was to retain the deed, subject to the right of the
grantor to recall it, if he desired, and in fact, subject to
the same instructions under which he had held the deed
theretofore. Isaacs has no recollection of any instruc-
tions given by the grantor as to Gay retaining the deed
or what he should do with it. Cornelius, however, says
that the grantor said for Gay to take the deed for safe
keeping for the present, and that the understanding was,
that he was to return it to the parties to whom it belonged
at the proper time. Cornelius, however, does not give any
language of the grantor, which would convey such an idea,
except to the extent that Gay was to take it for safe keep-
ing. Gay testifies positively that the grantor never
changed his instructions to him in regard to holding the
deed from the instructions given him at the hospital,
when it was written, and in this he is corroborated by
Isaacs. One of the daughters testifies that on the next day
while visiting her father she learned from him of the
visit of Gay, Cornelius and Isaacs, and that her father
asked her why she left the house while they were there,
and repeated the inquiry two or three times; that she
told him that she was not there; that he then said that he
had not sent for the men, and there would be two thous-
and five hundred dollars to pay; that she then repeated
to James Kirby what her father had said and that James
Kirby replied, that it was "some of her d—d lies;" she
inquired of James Kirby, if they were there for the
preparation of any papers, and he laughed and said that
they had just come to see his father, as they always

thought a great deal of him. This conversation James Kirby denies.

On the 14th day of April, which was just one month, lacking a day, from the visit of Gay, Cornelius and Isaacs, James Kirby obtained the possession of the deed from Gay, by stating to him that his father had directed him to get the deed from Gay and to take it to a lawyer, at Richmond, and get the opinion of the lawyer as to whether or not it was properly drawn. He took it to the lawyer, who directed him to have it recorded. He delivered it to the clerk of the county court for that purpose upon that day, and it was lodged for record, and in two or three days thereafter, but after the death of Reuben Kirby, the clerk having recorded it, returned it by mail to James Kirby. Reuben Kirby died, as stated, on the 15th day of April, the day following the one upon which James Kirby obtained the deed from Gay.

It should, also, be stated, that between the time of the illness of the grantor at the hospital and his last illness he sold the timber trees upon the farm for something in excess of two thousand and one hundred dollars, which James Kirby deposited in bank to the joint credit of himself and father, but thereafter the deposit was changed to the father alone, but this money had all been checked out and spent before the death of Reuben Kirby, and at his death, he was owing a note of one hundred dollars to the bank for borrowed money.

It is elementary to say, that a delivery is essential to the validity of a deed. It is as necessary as the signature of the grantor, and the title to the party, which is the subject of the deed, will not pass until the deed has been delivered and accepted by the grantees. Ford v. Gregory's Heirs, 10 B. M. 175; Speed v. Brooks, 7 J. J. M. 119; McConnell v. Brown, Lit. Sel. Cas. 459; Hughes v. Easten, 4. J. J. M. 572; 20 Am. Decisions, 230; Weisiger v. Mills, 91 S. W. 689; Myers v. Brown, 33 R. 525; Adkins v. Globe Bank & Trust Co., 124 S. W. 879; Sutton v. Gibson, 119 Ky. 422; White v. Holder, 118 S. W. 995; Cates v. Cates, 152 Ky. 47; Justice v. Peters, 168 Ky. 583. The delivery of a deed may be actual or it may be constructive, but in every instance there must be a delivery, if the title passes. The necessity of a delivery exists in the cases of voluntary settlements and conveyances to infants, as well as adults. The presumption of

the delivery and acceptance of deeds making voluntary settlements, and especially deeds to infant grantees, is indulged to a greater extent than in deeds to adults and deeds of bargain and sale, and if the deed is beneficial to the infant, its acceptance is presumed, but there can not be a presumption of an acceptance, unless there has been a delivery. In Pitman v. Flowers, 131 Ky. 804, the grantee was an infant five years of age, and the contention by the infant was, that the deed was delivered to his mother for his benefit, while the grantor contended that it was delivered to the mother to be put among the papers of the grantor, and without any intention of a delivery of it, and it was held, that if the grantor delivered the deed to the mother of the infant, with directions to place it among the grantor's papers, and without intention to part with its control, the title did not pass, but if the delivery was to the mother for the infant, with the intention on the part of the grantor to part with control over the deed, the title did pass. It is held by all authorities, that an essential element, in both actual and constructive deliveries of deeds, is the intention on the part of the grantor to make the delivery and to thereby vest the title of the property, which is the subject of the deed, in the grantee, and without such intention a delivery is not consummated. As said in 8 R. C. L. 1010, "the cardinal rule of intention is applied in its fullest force to voluntary settlements, with the result that the margin between constructive delivery and no delivery, for lack of surrender of control by the grantor, is reduced to its minimum," but it is said by the same authority in 8. R. C. L. 1011, "the current of decisions has gone far to enable the courts to carry out the intention of the donor and to protect the rights of the donee, but they have never presumed delivery without some evidence that it was the intention of the donor, and probably no case can be found warranting the conclusion, that a delivery has been made merely because the grantor has signed and sealed the instrument, without any further circumstance indicative of his intention." It is, also, a well known rule regarding the delivery of a deed, that the delivery may be proven by acts without words or by words without acts, or by both combined. Hughes v. Easten 4. J. J. M. 573; Shaptaw v. Ridgeway, 60 S. W. 723; Martin v. Bates, 20 R. 1798. Hence, it was held in Bunnell v. Bunnell, 111 Ky. 578, where the grantees in the deed were the sons

of the grantor and the making of the deed was voluntary, that, where the grantor when executing a deed intends it as a delivery and intends that the title to the property shall thereby pass to the grantees, and this is known and understood by the grantees, and the grantor and grantees then treat the estate as having actually passed by the deeds to the grantees, it will have that effect, though the deed is left in the possession of the grantor. This rule was approved in Wood v. Small, 90 Ky. 198; and Morrison v. Fletcher, 119 Ky. 94. Hence, it is not essential that there must be an actual manual delivery of the deed to the grantee. A delivery to an agent of the grantee or to the recording officer, or even to a stranger, for the benefit of the grantee, will uphold the validity of the deed, if the acts or words of the grantor, which are relied upon as proving a delivery, show that it was his intention that his acts should transfer the title and the grantee accepts the deed, or the circumstances are such that an acceptance by him will be presumed, as for instance a voluntary conveyance to an infant, which is beneficial to him. In Cronin v. Cronin, 169 Ky. 771, it was held that as between adults, that both a delivery and acceptance of a deed was necessary to pass the title under the deed, but that the delivery and acceptance may be shown by circumstances, as well as by direct evidence. It follows that a non-delivery and a non-acceptance may, also, be shown by circumstances, as well as by direct evidence. In Ford v. Gregory's Heirs, *supra;* McConnell v. Brown, *supra;* Speed v. Brooks, *supra,* it was held that where a grantor fully executes a deed by signing and acknowledging it, and then causes it to be recorded in the proper registry of deeds, that a delivery of the deed will be presumed, but that this presumption may be rebutted by competent evidence that no delivery was made. In Colyer v. Hyden, 94 Ky. 180, a parent had executed and acknowledged a deed to certain of his children and then delivered the deed to his wife with directions to put it away or to take care of it, and she having done so, until the death of the grantor, this court held that the title did not pass under the deed, because a delivery was not made, as the grantor did not, in his life time, release his control over the deed; but deeds, which he delivered to the scrivener for the grantees, passed the title to the lands of which they were the subject, although the scrivener did not deliver them to the grantees until

after the grantor's death. Hence, it appears that while an acceptance is the act which invests the grantee with title, it is the delivery which divests the grantor of title, and it follows that there can not be an effectual accept ance without a delivery. Bunnell v. Bunnell, *supra;* Alexander v. De Kermel, 81 Ky. 356. In Alexander v. De Kermel, *supra,* it was held that the mere acknowledgment of the deed alone will not establish a presumption of a delivery. Hence, it appears that a delivery of a deed does not take place until it is intended by the grantor, and conculsively so, for without an intention on the part of the grantor to deliver, although the grantee might undertake to make an acceptance, there will be no meeting of the minds to constitute a contract. The evidence of the intention to deliver must be acts or words or circumstances, in addition to the mere signing and acknowledging of the deed. That a valid delivery of a deed may be made by a grantor to a third person for the grantee, there is no doubt. If, when such delivery is made, the grantor intends to part with all control over the deed, the title to the property passes under it, although it is not delivered by the third person, until after the death of the grantor. One of the established rules by which to determine whether the grantor intends to deliver the deed and to divest himself of the title, for the benefit of the grantee, is, that the grantor parts with all control over the deed and retains no right to recall it or to otherwise dispose of it, and in case of the delivery of an executed deed by a grantor to a third person, the above rule seems to be controlling as to the grantor's intention upon the subject of the delivery. McClain v. French, 2 T. B. M. 147; Tinsley v. Tinsley, 7 R. 288; Martin v. Bates, 20 R. 1798; Colyer v. Hyden, *supra;* Barlow v. Hinton, 1 A. K. M. 97; Inlow v. Com., 6 T. B. M. 72; Hayden v. Easten, 24 S. W. 626; Nuckols v. Stone, 120 Ky. 631; 13 Cyc. 569; Pitman v. Flowers, *supra;* Hacker v. Hoover, 66 S. W. 382; Lay v. Lay, 92 S. W. 961; Sutton v. Gibson, 119 Ky. 422. A valid title can be passed by the grantor delivering a deed to a third person to be delivered to the grantee upon the death of the grantor, and if this is done and accepted by the grantee, it will be a valid deed as between the parties to it and their privies. Although a deed is not effectual to do the office of a will, and the common law rule is, that there must be a delivery and acceptance in the lifetime of the grantor to make a deed effectual, and this seems to be

the rule, except in the instance where it has been changed
by statute. In this jurisdiction, where the title to the
property can be conveyed by a deed, but the use and
possession of it retained until a future time, it seems that
the delivery of a deed to a third person, to be delivered
to the grantee at the grantor's death, can be construed
to be the passing of the present interest in the title of the
subject of the deed, and the retention by the grantor of
the use and possession during his life, and when the deed
is delivered to the grantee, as between the parties to it
and their privies, it will relate back for the purpose of
vesting the title, to the delivery of the deed to the third
person for the grantee. The same rule for arriving at
the intention of the grantor prevails in this state of case,
as does in any other where the deed is delivered to a third
person. In 3 Washburn on Real Property, section 2156,
it is thus stated:

"So long as the deed is within the control of the
grantor, and subject to his authority, it cannot be held to
have been delivered. Thus, where a grantor placed a deed
in another's hands and directed him to keep it until he
(the grantor), died, and to hold it subject to his control
as long as he lived, and then to deliver it to the grantee, it
was held to be no delivery."

In 13 Cyc. 569, 570, the rule is stated thus:

"A deed executed by a grantor with the intention of
having it take effect after his death, but which he retains
in his possession and control, will be ineffectual to pass
title, for want of delivery.

"The delivery of a deed by a grantor to a third per-
son, to be held by him and delivered to the grantee upon
the grantor's death, will operate as a valid delivery,
where there is no reservation on the part of the latter of
any control over the instrument. If, however, a power to
recall the deed is reserved by the grantor, there is no ef-
fectual delivery, and the deed cannot take effect."

In the instant case, when the grantor executed the
deed and delivered it to Gay, at the hospital, his direction
to Gay was to keep it until he called for it, or if he died,
to deliver it to one of the grantees. He reserved the right
to recall it at any time until his death. Gay so understood
the directions and the words import no other meaning.
It was subject to the control of the grantor as much as
if he had retained the custody of it himself. The grantor
was thus careful that a delivery should not be made until

a further conclusion on his part about the matter. So long as Gay so held the deed, there was no delivery, and there could not be an acceptance, either as a matter of fact or law. Without a delivery, the deed could pass no present estate in the property to the grantees. If Gay had held the deed without any further instructions, and the grantor had not called for it in his lifetime, and Gay had delivered it to the grantees after the death of the grantor, it could not have been accepted then so as to pass title, because the grantor, not having intended that title should pass during his lifetime by a delivery of the deed, the delivery of it afterward, would have been an attempt to make it do the office of a will, for which it was ineffectual. As said in Nuckols v. Stone, 120 Ky. 640, "It is conceded in all the cases, that if a present interest does not pass, the deed is ineffectual." It is, however, insisted that at the time Gay, Cornelius and Isaacs called upon the grantor and become witnesses to the deed or to the confirmation of it by the grantor, the delivery of it to Gay, at that time, was without any reservation of control over it by the grantor, and hence, it was a complete delivery and passed the title. We do not arrive at such a conclusion from the circumstances of that transaction. There was nothing transpired, which indicated that the grantor then believed that he was near death, and he lived for one month thereafter. If he had had such belief and intended that transaction as a consummation of the deed and then intended to deliver it, so as to vest the title in the grantees, as a finality, he naturally would have delivered it to James Kirby, who resided in his house, or to the other grantee, who was in the house for some weeks preceding the grantor's death. The facts seem to prove that whatever ultimate intentions the grantor had in mind, he had not yet concluded to deliver the deed, and in giving no further instructions in regard to its delivery, it can only be concluded that he permitted Gay to retain it, under the same instructions, that he had theretofore held it, and his desire to have other witnesses to the deed was to make it effective, as he thought, if he ultimately concluded to deliver it. His statement in answer to the question of Cornelius further indicates that he was not then expecting to die, and that he expected to make some further disposition of his estate in the future, about which he had not then determined. It appears, however, according to the appellant, James Kirby, that the grantor did call upon Gay for the deed

before his death, but not for the purpose of a delivery to the grantees, but for the purpose of having it examined by a lawyer, and to obtain an opinion as to whether it was properly drawn. James Kirby, according to his own statement, exceeded the authority given him by his father and caused the deed to be recorded, and failed to return it to him. A very similar state of facts to the facts pertaining to the obtention of the deed by James Kirby existed in Koger v. Koger, *supra,* and it was held that a delivery had not been made, as was held in Barlow v. Hinton, *supra,* where the possession of the deed was obtained by the grantees without the intention of the grantor to deliver it. In Hayden v. Easten, *supra,* the deed was delivered to a third person to be delivered to the grantee at the death of the grantor, but there was no reservation of control or power to recall the deed retained, and it was held to be a sufficient delivery, and a similar holding was made in the case of Colyer v. Hyden, *supra,* upon a similar state of facts, where a deed was delivered to the scrivener for the grantee. So, whatever may have been the ultimate purposes and intentions of the grantor, it is evident, that up to the time of his death, the intention to deliver the deed and thereby pass the title to the lands had not been arrived at by him, and that, as a matter of fact, he never delivered the deed.

Having arrived at this conclusion, it is unnecessary to discuss the third ground upon which appellees sought to avoid the deed.

Hence, the judgment must be affirmed.