## Hays, et al. v. Lackey, et al.

(Decided June 20, 1919.)

### Appeal from Lawrence Circuit Court.

Deeds—Estate Conveyed—Covenants—Warranty—Purchases With Notice.—In the division of their father's estate in the year 1864, M. J. P. was allotted lot No. 6, M. B., lot No. 7, and W. H., lot No. 5, in addition to other property. M. J. P. and M. B. made an oral trade with their brother, W. H., by which they exchanged other lands to him for lot No. 5. At the same time they made an oral agreement by which M. J. P. was to have lot No. 5, and M. B. was to have a portion of lot No. 6. In the year 1865. M. J. P. and her husband sold and conveyed, by deed containing a covenant of warranty, all the minerals except coal in lot No. 6, "also that other portion of the said H. B. Hulett estate which the parties of the first part have acquired from William Hulett and other heirs of said H. B. Hulett, deceased, by purchase or exchange, making in the aggregate —— acres." In the year 1876, W. H. conveyed lot No. 5 to M. J. P. and her husband, and shortly thereafter M. J. P. and her husband conveyed to M. B. a portion of lot No. 6. After the execution of the deed from W. H. to M. J. P. and her husband, they conveyed the lands to appellants without reserving the mineral. Held, that as the weight of the evidence showed that, at the time of the execution of the mineral deed, M. J. P. and her husband had acquired by oral exchange all of lot No. 5, all of the minerals except coal passed by the mineral deed, and since the deed contained a covenant of general warranty, the subsequent deed from W. H., vesting the grantors with the legal title to all of lot No. 5, inured to the benefit of the grantees in the mineral deed and perfected their title before the subsequent conveyances to appellants or their predecessors in title, who purchased from M. J. P. and husband with constructive knowledge of the fact that the minerals had theretofore been conveyed.

WILLIAMS & JAMES and SMITH & COMBS for appellants.

WILLIS & DAVIS and W. D. O'NEAL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

H. B. Hulett died in the year 1863, leaving a widow and twelve children. He was the owner of lands in West Virginia and also in Lawrence county, Kentucky. Shortly after his death, his lands were partitioned among his heirs and conveyed to them in severalty by commissioners' deeds. Of his lands in Lawrence county, lot No. 5

was allotted to William Hulett, lot No. 6 to Mary J. Potter, and lot No. 7 to Mildred Blankenship. It also appears that Mary J. Potter and Mildred Blankenship were allotted lands in West Virginia, which in a short time they traded to William Hulett for lot No. 5, in Lawrence county, and about the same time, some kind of a trade was made by which Mary J. Potter and her husband acquired all of lot No. 5, and in consideration therefor agreed to convey to Mildred Blankenship a portion of lot No. 6. However, no deeds were then executed by the parties.

On April 5, 1865, Mary J. Potter and her husband, Robert Potter, sold and conveyed, by deed containing a covenant of warranty, to John B. Hatcher, John M. Rice and Jake Rice, "all the minerals, coal, oil, rock carbon or other oils, salt water or any and all other valuable oils or minerals except (coal) that has been or may be found in, upon or under the land of the parties of the first part, situated on the Big Sandy river, in the county of Lawrence, in the state of Kentucky, and particularly known and described as that part of the real estate of H. B. Hulett, deceased, which was set apart by the commissioners, S. K. Muncey and others to Mary J. Potter, wife of Robert Potter, and one of the heirs of the said H. B. Hulett, deceased, and containing one hundred and ninety acres, also that other portion of the said H. B. Hulett estate which the parties of the first part have acquired from William Hulett and other heirs of said H. B. Hulett, deceased, by purchase or exchange, making in the aggregate — acres." At that time, the grantors, Mary J. Potter and Robert Potter, had no title of record to lot No. 5, but that lot was subsequently conveyed by William Hulett to the grantors, by deed dated August 24, 1876, and executed and acknowledged on that day and subsequently recorded in the Lawrence county clerk's office. On September 7, 1876, Mary J. Potter and husband conveyed to Mildred Blankenship a portion of lot No. 6, and about the same time, Mary J. Potter and husband and Mildred Blankenship and husband conveyed to William Hulett certain lands in West Virginia.

In this action, appellees, Lyda Lackey and others, asserted title to the minerals in lots No. 5 and No. 6, under and by virtue of the deed of April 5, 1865, from Mary J. Potter and her husband to John B. Hatcher and

others, and the subsequent deed executed by William
Hulett to Mary J. Potter and her husband on August 24,
1876. On the other hand, appellants claim title by deeds
claimed to have been executed by Mary J. Potter and
her husband after they acquired title from William
Hulett in 1876. On final hearing, the chancellor adjudged
that appellees were the owners of the minerals in lots
No. 5 and No. 6, and from that judgment this appeal
is prosecuted.

Appellants have abandoned their claim of title to the
minerals by adverse possession, but insist that the court
erred in adjudging that appellees were the owners of all
the minerals in lot No. 5. The argument is as follows:
When the deed to the minerals was made to the ancestors
of appellees, Mary J. Potter and Mildred Blankenship,
who had exchanged their West Virginia land for lot No.
5, were the joint owners of lot No. 5. Hence, when the
mineral deed was made, the Potters were the owners of
only an undivided one-half interest in the minerals, and
therefore intended to convey, and did convey, only the
interest which they then owned. That being true, their
covenant of warranty included no other interest, and the
subsequent deed executed by William Hulett to the Pot-
ters inured to the benefit of the grantees in the mineral
deed only to the extent of the interest therein conveyed.
Hence, when the Potters, after acquiring the legal title to
lot No. 5, conveyed that lot to appellants or their pred-
ecessors in title without reserving the minerals, the
other one-half of the minerals passed to them. This con-
tention, however, is not borne out by the facts. The
decided weight of the testimony is to the effect that the
oral exchange between William Hulett on the one hand
and Mrs. Potter and Mrs. Blankenship on the other, as
well as the agreement by which lots 5, 6 and 7 were to be
divided between the Potters and the Blankenships, was
made before the execution of the mineral deed. Indeed,
the language of the deed itself confirms this view of the
question. The second tract is described as follows:
"Also that other portion of the said H. B. Hulett estate,
which the parties of the first part have acquired from
William Hulett and others, heirs of said H. B. Hulett, de-
ceased, by purchase or exchange, making in the aggregate
— acres," thus showing that the grantors intended to
convey not only that portion of the estate of H. B. Hulett

which they had acquired from William Hulett, but also from the other heirs of H. B. Hulett, and therefore necessarily including Mrs. Blankenship, the only other heir of H. B. Hulett from whom they acquired any portion of the estate of H. B. Hulett. Since at the time of the execution of the mineral deed, the Potters had acquired by oral exchange all of lot No. 5, we conclude that it was their purpose to convey, and that they did convey, all the minerals in that lot with the exception of the coal, which was reserved, and since the deed contained a covenant of general warranty, the subsequent deed from William Hulett, vesting the Potters with the legal title to all of lot No. 5, inured to the benefit of the grantees in the mineral deed and perfected their title before the subsequent conveyances to appellants or their predecessors in title, who purchased from the Potters with constructive knowledge of the fact that the minerals underlying the land had theretofore been conveyed. It follows that the judgment was proper.

Judgment affirmed.