# Ratcliff's Guardian v. Ratcliff.

(Decided February 9, 1932.)

(As Modified on Denial of Rehearing March 15, 1932.)

C. F. SEE, Jr. for appellants.

VINSON & MILLER and A. O. CARTER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The issue is whether there was a delivery of a deed by Roscoe Ratcliff, deceased, to his wife, the appellee, Jennie Ratcliff. She sued her daughter and the children of a deceased son to quiet title to a certain tract of land,

the cloud thereon being the claim of nondelivery of her deed.

The surface of a larger body of land had been conveyed to Roscoe Ratcliff and his brother Dan Ratcliff, in 1908. In 1913 a deed of partition was executed, and the tract involved in this suit was allotted to Roscoe. That deed was not recorded until after his death. In 1915 Roscoe Ratcliff and his wife had an attorney prepare a deed to this land from him to her, with a general warranty covenant. It purported to convey the entire property in the tract, although he did not own the minerals. It also included a transfer of all of her personal property of every kind. At the same time they had the attorney prepare a will for Mrs. Ratcliff by which she devised this land specifically (referred to as having been deeded to her by him), and all of her personal property to her husband. The will expressly excepted other land which she had acquired from her father. The attorney testified that these papers were executed by the respective parties, and were delivered to Ratcliff and his wife, who left the office together.

Mrs. Ratcliff testified that she put the deed and will in her trunk, where it remained until after her husband's death. She had brought the trunk with her at marriage and carried the key to it, but stated that her husband could have gone into the trunk had he desired. There was no concealment of the fact of this conveyance having been made, for she told her daughter that her father had fixed everything for her, and, during his fatal illness, in discussing the status of his affairs, she had told his brother, Dan, about it, and had also during this period told her daughter that he had deeded everything he had to her. On Sunday following Ratcliff's death, on November 25, 1927, his brother asked Mrs. Ratcliff about the deed, and she brought in the tray to the trunk and got the deed and will from among the papers in it and handed them to him. At her request, he had the deed recorded a few days afterward. The daughter further testified that her mother carried the key to the trunk in which she kept her papers, trinkets, and things of value. She had kept her father's papers also.

On June 26, 1920, which, as will be noted, was after the execution of the deed to his wife, Roscoe Ratcliff and his brother acquired by conveyance the mineral rights in their original tract, and it was placed of record August 17, 1921.

It is a well-established rule of property, founded upon the doctrine of estoppel, that where a covenanter afterward acquires title to land which he did not own at the time of his conveyance with general warranty, neither he nor his privies will be permitted to claim it, in opposition to his deed, for the title so acquired inures to his vendee and covenantee. 8 R. C. L. 1058; 10 R. C. L. 678; War Fork Land Co. v. Carr, 236 Ky. 453, 33 S. W. (2d) 308. There can be no difference between a later acquisition of title to other lands in possession and included in a covenant and the later acquisition of the minerals in or under the land conveyed. A mineral estate is everywhere recognized as so severable from the surface estate that separate titles in the minerals and the surface may be in different persons at the same time; but a conveyance in fee of land, without reservation or exception, embraces all minerals thereunder as well as the surface. Kincaid v. McGowan, 88 Ky. 91, 4 S. W. 802, 9 Ky. Law Rep. 987, 13 L. R. A. 289; Richards v. Potter (Ky.), 124 S. W. 850. A deficiency in acreage of coal is subject to the same laws as a deficiency in acreage of surface or the entire property in land. Caudill v. Bernheim, 194 Ky. 368, 238 S. W. 1041. So also the rule as to inurement of after-acquired title is recognized and applied to cases where title to the mineral estate which had been severed is later vested in the grantor. Eli v. Trent, 195 Ky. 26, 241 S. W. 324; Hays v. Lackey, 185 Ky. 17, 213 S. W. 205; Kentucky River Coal Corporation v. Williams, 226 Ky. 93, 10 S. W. (2d) 617. Therefore, the title to minerals vested in Mrs. Ratcliff, grantee, in the general warranty deed of her husband when he acquired title thereto subsequent to the execution of the deed, and his heirs did not inherit that property or estate.

But this fact of taking the conveyance to himself rather than to his wife, and the further fact that in 1926 an oil and gas lease of this property was granted by him, with Mrs. Ratcliff executing it in the capacity of his wife, are submitted as proof that there had not been any previous conveyance to her of the property. It is also shown that in 1922 Roscoe and Dan Ratcliff conveyed 71 acres to the county board of education, with their wives joining in the deed as such. But this was taken from the part of the original body of land which had been allotted to Dan in the partition, and that deed had not then been recorded. It is admitted that Ratcliff continued to exer-

cise the rights of ownership in the land after the deed to his wife was signed by renting out the surface, selling some of the timber, collecting the proceeds, and otherwise managing it as his own.

The widow of the deceased son, who had been killed in a mine in 1921, and mother of the infant defendants, testified that she had no knowledge of the existence of this deed, and that Roscoe Ratcliff had always told her that he intended for her children to have his son's part in the land. One of those children testified that on an occasion about a year before his death her grandfather told her that, if she ever wanted to live on the place, he was going to give the land "to us." Both of these witnesses say that Ratcliff carried the key to the trunk. A brother of the son's widow stated that Ratcliff had told him he intended the upper end of the place for his son and at his death for his granddaughter, Ethel.

The chancellor held that there had been a delivery of the deed.

The delivery and acceptance of a deed are as necessary to its validity as is the signature of the grantor. It is the delivery that divests title in the property. That must constitute more than merely transferring the manual possession of the paper, for an essential element is the intention on the part of the grantor to make a delivery and thereby invest title in the grantee. It may be proven by acts without words or words without acts, or both combined. There is a strong presumption of a complete and effective delivery when the deed is found in the possession of the grantee, and this throws the burden upon the other party to establish by clear and convincing evidence that the intention of the parties was not to presently pass title. The presumption is not conclusive, for the true state of facts is open to establishment. Kirby v. Hulette, 174 Ky. 257, 192 S. W. 63; Hood v. Nichol, 236 Ky. 779, 796, 34 S. W. (2d) 429. In the latter case may be found a full discussion of the subject of delivery of a deed, in which the rules in respect thereto and the distinctions between them are considered. In that case the deed at the death of the grantee was in his possession, although in the safety box of the grantor where he had kept his papers. But the circumstances indicated that there had been only a conditional or contingent delivery, and it was held that title did not pass because of the absence of an intention to presently pass the title.

The facts are different here. While the exercise of the privileges of ownership by the grantor and the failure to have the deed recorded support the appellants' claim that the deed was not delivered in the legal sense, yet that conclusion is overcome by the other proven acts of the parties. No probative significance can attach to the failure to record the deed, because even the deed of partition between the brothers remained unrecorded until after Ratcliff's death, and there was a delay of some eighteen months in recording the conveyance of the mineral rights. The plan of conveying the property to the wife and having her execute a will bequeathing it back was a simple and effective way of providing for her. It is not an unusual method. If there had been no present intention of passing title, undoubtedly the husband would have executed a will bequeathing the property to her instead of the deed. The subsequent management of the property by him was consistent with the mutual confidences manifested by the execution of those papers. Certainly, the inferences of no delivery are not sufficient to counterbalance the stronger ones the other way or to enable this court to reverse the decision of the chancellor on the facts.

The appellants assert that the evidence of the appellee was incompetent. Practicaly all of the material facts about which she testified were also related by other witnesses, and her evidence might have been disregarded. But there was no objection made in the manner provided by the Code. Recognizing the effect of this rule requiring written exceptions, appellants' counsel submit that the provisions of section 606, Civil Code of Practice, are mandatory in character, explicitly declaring, as they do, that no one shall testify for himself concerning any transaction with a deceased person (with certain exceptions), and therefore that there is no need to enter an objection to such a one testifying, the law itself being sufficient. The Code provisions are rules of practice, regulating the proceedings. Secs. 837, 838, Civil Code of Practice. And it has never heretofore been supposed, so far as we know, that those rules could not be waived at least by parties sui juris. That has been the interpretation of the law in this jurisdiction in respect to the incompetency of witnesses since 1808, when in Respass v. Morton, 3 Ky. (Hardin) 226, it was held that failure to object to the reading of a deposition on the ground of incompetency of the witness was waived

by a failure to object upon the trial. Sections 586 and 587 of the Civil Code of Practice require that the objection shall be in the form of written exceptions filed with the record [Hall v. Hall, 241 Ky. 317, 43 S. W. (2d) 1001], and that was not done. Hence the incompetency of the witness and her evidence was waived.

The judgment is affirmed.