## Newberry v. Winlock's Executrix.

(Decided March 3, 1916.)

### Appeal from Barren Circuit Court.

1. **Trusts—Express Trusts—When Not Enforcible.**—A trust will not be enforced where the claim is old and stale and the acts of the parties authorize a presumption unfavorable to its continuance.

2. **Trusts—Express Trusts—Sufficiency of Evidence.**—In an action by a daughter to recover of her father's estate, evidence considered and held insufficient to authorize the enforcement of the trust.

J. P. HOBSON & SON and W. L. PORTER for appellant.

BASIL RICHARDSON and BAIRD & RICHARDSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This is a suit by Willie Winlock Newberry to enforce a trust against the estate of her father, Doctor J. T. Winlock. Being denied the relief prayed for, she appeals.

Doctor Winlock first married Josie Simmons. Willie Winlock, now Willie Winlock Newberry, was their only child. Josie Simmons Winlock inherited from her father personalty of the value of $433.65, which, on December 15th, 1890, she loaned to her two brothers, S. S. and W. E. Simmons. She also sold to them her interest in her father's land for $1,133.60 and took therefor their note, dated February 1st, 1891, and payable to her. S. S. Simmons, one of the borrowers, testified that Mrs. Winlock was anxious for him and his brother to keep the money if they needed it, but they paid off the notes as fast as they could and Mrs. Winlock said that Doctor Winlock could lend it down there as well. Mrs. Winlock also said that she wanted it held for Willie, who was then a child in school; that the doctor had plenty to educate her and she wanted it kept for her, because in the course of time it might possibly be of benefit to her. To this Doctor Winlock agreed, and stated that he would hold the money for Willie and would have no trouble in lending it out. Mrs. Minnie Simmons, wife of S. S. Simmons, testified that when Willie was married, she and her husband went to the wedding, and in the evening after Willie and her husband were gone, Doctor Winlock

said that now that Willie was married he would turn over to her her mother's money; that he had always kept it for her and would have to turn it over to her. This was in 1899. She also stated that Mrs. Winlock was at her house several days before she died and, in the doctor's presence, spoke of the money and of her desire that it should go to Willie. Mrs. Docia Hodges testified that, about seven years before she gave her deposition in 1913, the doctor was at her house and remarked that he would have to get up some money for Ivy, a niece for whom he was guardian, but that he would not have to get up Willie's, as she did not need hers and could do without it for a while. She further testified that she was present when Mrs. Winlock was building her home in 1888 and heard Mrs. Winlock say that she wanted things convenient but not expensive; that she wanted to save her money for Willie, who was then a little girl about ten or twelve years old.

It further appears that E. T. Winlock, a brother of Doctor Winlock, died in the year 1901, leaving a last will and testament, by which he devised all of his property to his niece, Willie Winlock, with the provision that it should go to the heirs of her body if she should have heirs, but if she should die without heirs, to his brothers, J. T. and J. R. Winlock. Doctor Winlock was appointed executor of his brother's estate. The personal property was appraised at $867.11, which was turned over to Willie Winlock. At that time E. T. Winlock was indebted to Doctor Winlock in the sum of $7,315.37, and possibly more. Evidently for the purpose of investing Willie Winlock with absolute title to the land which the testator owned, the doctor, instead of cancelling his debts, permitted the land to be sold. It was purchased by Mrs. Newberry for the sum of $6,428.26 and bond executed for the purchase price. Doctor Winlock and Mrs. Newberry, through her husband, had some kind of a settlement, and the doctor wrote the commissioner as follows:

"You will mark the sale bond in the above styled action satisfied by agreement between myself and T. P. Newberry and wife."

There was found among the doctor's papers a note for $2,448.87, signed by T. P. Newberry and wife, dated May 8th, 1909, and credited by payment of $500.00, paid February 28th, 1913, and $350.00, paid September 17th,

1913. There. is further evidence to the effect that the doctor held a prior note for the same sum executed in 1906. It is also shown that plaintiff's husband, who transacted plaintiff's business, and Doctor Winlock frequently had business transactions. The relations between plaintiff and her father were very cordial and her father occasionally made her presents.

Some time after his first wife's death Doctor Winlock married a second time. Of this marriage there were born five children. The doctor died in December, 1912, leaving a will by which he devised his property to his second wife and her children. His will contains the following provision:

"My oldest daughter, Willie Bell Newberry, has already been provided for out of my estate as the settlement of the estate of E. T. Winlock will show, and it is my desire that she shall not share any further in my estate."

At the time of the doctor's death his estate was worth between $25,000.00 and $35,000.00. It also appears that Mrs. Newberry and her husband were worth between $20,000.00 and $25,000.00.

The argument for plaintiff is as follows: The evidence is sufficient to establish a trust. Being an express and continuing trust, the statute of limitation does not apply. The plea of accord and satisfaction is not sustained because Doctor Winlock's will very clearly shows that the property which he gave to his daughter in settlement of E. T. Winlock's estate was not paid in settlement of the trust, but was an advancement out of his own estate. In support of this contention the point is made that Mrs. Newberry in that settlement received only $6,428.26, less a $2,400.00 note, and as the trust fund at that time amounted to about $3,000.00, she, in fact, received from her father's estate only $700.00 or $1,000.00, when her father said in his will that she had already been provided for out of his estate. As a matter of fact, however, the doctor's claims against E. T. Winlock's estate amounted to $7,315.37. The personal property amounted to $867.11. The doctor could have purchased the land himself and have not been out a single dollar. He does not state in his will that Mrs. Newberry had received her portion of the estate. He merely states that she had been provided for. As a

matter of fact, she was enabled by the doctor's assistance to secure a farm, which, at the time of the doctor's death, was worth at least one-half, and possibly two-thirds, of the doctor's whole estate. Looking at the matter in this light, he had reason to feel that she had been provided for. Furthermore, as Mrs. Newberry and her husband had gone off together for the purpose of establishing their own home, Mrs. Newberry needed the trust fund then. She was paid a sum very much in excess of the trust fund, even if estimated at its value when paid. It is also clear that this arrangement was made pursuant to an agreement between Doctor Winlock and Mr. Newberry, who acted as agent for his wife. After that time Mr. and Mrs. Newberry executed their note to the doctor for $2,400.00 and made certain payments thereon. There is no direct testimony as to what items were embraced in the settlement, but the subsequent execution of the note for $2,400.00 was either inconsistent with the existence of the trust, or persuasive evidence that the trust had been fully settled. While it may be true that the statute of limitation does not apply to express and continuing trusts, courts of equity will deny relief upon old and stale claims, where the acts of the parties authorize a presumption unfavorable to the continuance of the trust. Taylor v. Fox's Executors, et al., 162 Ky., 804; Helm's Executor v. Rogers, 81 Ky., 568. In the present case, we have a trust alleged to have been created between 1891 and 1894. The beneficiary lived with her father until 1899, when she became of age. A few months later she married. In 1906 the trustee enables her to get the benefit of a large estate by waiving his claims against the devisor. Though claiming that her father was then indebted to her in a sum in excess of that amount, she and her husband executed to her father in settlement a note amounting to $2,400.00. The father dies in December, 1912. The note is found among his papers with certain credits thereon. Not until after his death and his lips are closed is any attempt made to enforce the trust, which it is alleged was created eighteen or nineteen years prior to the time the suit was brought. Considering the lapse of time, the death of the trustee and the inability of the court to ascertain the whole truth in connection with the acts of the parties and other circumstances tending to raise the presumption either that the trust never

existed or was fully settled during the life of the trustee, we conclude that plaintiff's claim is too stale and uncertain to authorize its enforcement against her father's estate.

Judgment affirmed.