## Hustonville and Coffey's Mill Turnpike Road Company, et al. v. McAninch's Administrator, et al.

(Decided January 17, 1919.)

### Appeal from Lincoln Circuit Court.

1. Corporations— Commissioner's Report— Accounting— Evidence.— Stockholders are entitled to share in the distribution of the full

sum due from a creditor and cannot be charged with a deduction made by said creditor where the amount retained does not exceed the amount to which the creditor would be entitled on' a final distribution. Evidence in this case does not show there has been a duplication of charges from the sale of a toll house.

2. Appeal and Error—Court Commissioners—Report—Exceptions.— A party complaining of a master's report should point out by exception any errors therein. ·Objection should be made in the court below. It is too late to make same in appellate court.

GEORGE E. STONE and J. S. OWSLEY for appellant.

K. L. ALCORN and P. M. McROBERTS for appellees.

Opinion of the Court by Judge Quin—Affirming.

This is an appeal in the consolidated cases of the Lincoln County Fiscal Court, et al. v. Hustonville and Coffey's Mill Turnpike Road Company, and its president, G. C. Lyons.

Appellees (plaintiffs below) allege they were owners of stock in the turnpike company; that by a sale of its turnpike it had ceased to be a going corporation; that G. C. Lyons, as president, treasurer and manager, had in his hands certain sums of money belonging to the company arising from the sale of its roadbed and other property, and from tolls which had been collected.

The petition asks that the affairs of the company be settled; the property on hand sold, and the assets distributed among the stockholders. The cause was referred to the master commissioner. The commissioner filed his report and exceptions to same filed by appellees, having been overruled, judgment was entered (a) fixing the ownership of 338 shares of the capital stock of the company, and (b) adjudging that appellant Lyons, who had absolute control and management of the company, had collected and had on hand a sum of money aggregating, with accrued interest as of the date the petition was filed, $12,039.38, or $35.61 on each share of stock, and which sum the stockholders were entitled to have paid to them.

Appellants contend the judgment is erroneous in the following particulars:

1. In adjudging that the amount received from Lincoln county on account of the purchase of a portion of the pike was $3,000.00 instead of $2,400.00.

2. In charging appellants with the proceeds of sale of a toll house as $550.00 instead of $275.00.

3. In adjudging that J. W. Drye was the owner of any shares of stock in the company.

It being contended that by reason of the first two items the amount for distribution was excessive. These in their order.

1. Lincoln county agreed to pay $3.000.00 for the six and one-half miles of the pike in that county, but having failed to receive any dividends from the company on the 60 shares of stock held by the county it deducted $600.00 from the purchase price, paying only $2,400.00. This was November, 1901. At the June term, 1914, of the lower court the claim of the Lincoln county fiscal court was compromised and settled by an agreed judgment. Appellants contend they should only be charged with $2,400.00. According to this contention Lincoln county could have retained the whole of the purchase price for its share of the dividends or assets and the remaining stockholders would have no cause to complain. We can not see it that way. The amount of said deduction could properly have been credited on the pro rata due the county on its 60 shares, but the other stockholders were entitled to the benefit of the full purchase price. The amount of said deduction, plus the sum received in settlement of Lincoln county's claim, did not give the county as much as it would have received under the judgment had it not settled its claim; hence the appellants were not hurt. Justice to the stock-holders demands that in arriving at the amount for distribution the sum of $3,000.00 be treated as the sum received from the sale of the pike to Lincoln county. This plan accords an equal distribution to all based on the number of shares held.

2. In a report of the company, filed with the county court May 3, 1890, this item is included in the receipts: "To amount collected on house and lot, $275.00." Appellees claim this is a part of the proceeds of sale of a toll house to Mrs. Ellen Powers. There is nothing in the record to substantiate such a claim. In reaching the sum due the stockholders the master includes $3,000.12, being the balance on hand May 6, 1893, as shown by report filed in the county court, the balance of the preceding year being brought forward in each succeeding report. In this wise the item of $275.00 enters into the aforesaid balance.

The master also charges appellants with the sum of $550.00, received from Mrs. Powers for the toll house and

lot, and appellant claims this is a duplication to the extent of $275.00.

It is alleged in the petition, and admitted in the answer, that the sale of the toll house to Mrs. Powers was in 1906, the price being $550.00. We fail to see how the item of $275.00, appearing in the report filed in 1890, could be taken as a payment under a sale that did not take place until sixteen years later. There is nothing in the 1890 report to indicate it was from this source. Besides, at the time the turnpike was being operated by the company, as was the case in 1890, it would hardly have disposed of so necessary a portion of its property as a toll house. Then, too, the president of the turnpike company was twice on the stand and he probably could have explained this item of $275.00, but he did not do so, nor did he claim it was a part of the Ellen Powers sale. The answer admitting the sale as being in 1906 for $550.00, we see no cause for disturbing the judgment in this respect. The court is not favorably impressed with the attitude of the president, who owned 220 of the 338 shares of stock in the company, and who seems to have been its guiding spirit and of all persons the most familiar with its affairs. He seems to have adopted a policy of resisting rather than assisting the master in the latter's endeavor to ascertain the proper credits and debits that should enter into the making of his report.

3. In paragraph two of the master's report he states that G. W. Drye is the owner of 41 shares of stock in the appellant company. No exception was filed to this item. A party complaining of a master's report should point out, by exception, any errors therein and thus afford the master an opportunity of correcting his errors, if any, or of reconsidering his opinion.

The objection should have been made in the court below, but was not done. It is too late to make it now. Henderson's Chancery Practice, section 456; Magruder, et al. v. Ericson, 146 Ky. 89; Sullivan v. Sullivan, 147 Ky. 48.

In fixing the amounts due the several stockholders the court has charged the sum of $50.00 and interest against the amount due the estate of H. H. McAninch, whereas this charge should have been against the estate of J. S. Coulter. The court can correct this item upon the return of the case. This in no wise alters the amount of the judgment to be paid by the appellants, the amount due

the H. H. McAninch estate being $106.83 instead of $24.18; that due the estate of J. S. Coulter $24.18 instead of $106.83.

The judgment is affirmed.