## Luigart's Administratrix v. Luigart's Administrator, et al.

(Decided May 8, 1923.)

## Appeal from Fayette Circuit Court.

1. Executors and Administrators—General Exception Sufficient to Attack Several Reasons for Allowance of Single Claim.—Where there was but a single claim against an administrator in a controversy based on a note, but the master commissioner, to whom the validity of the claim was referred, stated several reasons for sustaining the claim, a general exception to the report of the master commissioner was sufficient, though it would have been insufficient if several claims had been separately passed on by the master commissioner.

2. Witnesses—Can Testify to Entire Conversation with Deceased After Opposite Party Develops Part, and the Rule Prohibiting Such Testimony May be Waived.—The rule prohibiting a party from testifying to a conversation with a deceased person may be waived, and, when the adverse party develops such evidence, it is permissible for the witness to detail all that was said in the conversation to which reference was made.

3. Witnesses—Cross-Examination of Claimant Held Not to Make Conversation With Deceased Admissible—Where a claimant against an administrator was asked on cross-examination as to why she claimed the note was a valid obligation against the estate, to which she replied, "Because it has never been paid and belongs to me," there was not such reference to a conversation with deceased as to permit her, on being recalled, to relate a conversation in which deceased stated to her that he owed the amount of the note.

4. Executors and Administrators—Transactions Between Parties Held Admissible on Issue of Payment of Note.—On a claim against a decedent's estate based on a note presented by the administratrix of the payee, where the maker's administrator produced a receipt from the payee reciting payment of the note, the genuineness of which receipt was questioned, the business transactions between the maker and the payee of the note were admissible to determine whether it had been in fact paid.

5. Bills and Notes—Possession of Note by Payee Raises Presumption of Non-payment.—The possession by the payee of a note admittedly executed by the maker raises a presumption of non-payment of the note.

6. Bills and Notes—Evidence Held Sufficient to Overcome Presumption of Non-payment.—Evidence that the maker had transacted part of the payee's business for him and had transferred to the payee certain bonds, and thereafter made a settlement with the payee in which he gave a check, which, added to the amount of the bonds, equaled the amount due on the note, and thereafter the

payee of the note repaid to the maker amounts advanced to him, and had never stated to his son, to whom he disclosed other business transactions, that the note was owed to him, held sufficient to overcome the presumption of non-payment of the note, resulting from its possession in the hands of the payee at his death.

7.   Executors and Administrators—Delay in Enforcing Note is Circumstance to be Considered on Issue of Payment.—Delay by the payee of a note for several years after its maturity and until his death without attempting to enforce payment, though he was frequently in need of money, and the maker of the note amply able to pay, should be considered on the issue of whether it had been paid, even though such delay was insufficient to defeat recovery on the note.

J. P. JOHNSTON for appellant.

HUNT, NORTHCUTT & BUSH and D. GRAY FALCONER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Gust Luigart, a wealthy bachelor, died intestate. In a suit to settle his estate, Mrs. Mollie Luigart, as administratrix of the estate of Fred Luigart, deceased, filed a note executed by the former and payable to the latter. It was for $4,050.00, dated January 1st, 1902, due one year after date with interest at 5 per cent; two credits were endorsed thereon for interest to January, 1903 and 1906, the respective amounts being $200.00 and $600.00, the last endorsement signed "Gust Luigart." This was properly proven and was reported by the master commissioner as a valid claim.   Exceptions were filed to it on the ground (a) that it had been settled, (b) that by the laches of the obligee it had become stale and invalid, (c) that the note had not been listed for taxation.

Thereupon it was again referred to the master to take proof and report as to its validity. Pending this the exceptors found among the papers of Gust Luigart a paper which reads as follows: "Sept. 29, 1909.   Receipt to Gus Luigart on a/c of $4,000.00 watterworks bonds for note 1902 as the note was misplased I give this to show that I have waved all clams aganst the note.

"FRED LUIGART."

The body of this instrument is admittedly in the handwriting of Gust Luigart, but the signature was disputed and a volume of evidence was taken on that issue.

The master reported that the signature was a forgery, that there was no evidence of payment, the doctrine of laches did not apply and reported the claim as a valid one against the estate. An exception was taken to the report finding the note a valid claim, and the court sustained the exception and disallowed it.

It is now urged that a general exception was insufficient, that the master segregated his conclusions of fact and each was the subject of a separate exception, and failing in this respect the court was without power to review those to which no exceptions were filed, and as to them the report is final. The cases of Magruder v. Ericson, 146 Ky. 89; Sullivan v. Sullivan, 147 Ky. 48; H. T. M. R. Co. v. McAninch's Admr., 182 Ky. 788, are cited in support of this conclusion. However, in all of these cases the claims embraced several disputed items which when separated were equivalent to distinct claims, and necessarily it was held that the report was final and conclusive as to those items to which no exceptions were filed, but in this case there is but one claim and the exception is to its validity, and it seems this would include all the reasons given by the master for finding it valid.

The exceptors took the deposition of Mrs. Mollie Luigart as on cross-examination. After setting out fully the relation of the parties she was asked, "Do you now claim that this is a just obligation against Gust Luigart's estate? and she answered, "I do." She was then asked, "Why do you do so?" and answered, "Because it has never been paid and because it belongs to me."

Some weeks later she gave her deposition on her own behalf and the above questions were read and she was asked if she had any other reason for asserting this note as a valid claim against the estate of Gust Luigart. Exceptors objected and proposed to withdraw the former questions and answers; whereupon she answered, detailing two conversations with Gust Luigart in which she says he admitted owing the note and promised to pay it. The lower court sustained an exception to this evidence.

The rule prohibiting a party from testifying to a conversation with a deceased person is based on the soundest policy. It may be waived, however, and when the adverse party develops such evidence it is permissible for the witness in the elaboration of a previous answer to detail all that was said in the conversation to which reference was made. But in this case it is not clear that

the previous question called for a statement of the conversations. The original answer did not include such, and in view. of all the circumstances we cannot say the lower court erred in sustaining the exception.

As suggested above the master commissioner found that the purported signature of Fred Luigart to the paper of date Sept. 29, 1909, was not genuine; the view of the lower court on this question does not appear in the record. This signature and a number of the admitted signatures of Fred Luigart have been photographed in various degrees of enlargement, and these photographs, together with the original and a large number of checks bearing his admitted signature, are brought to this court as exhibits and we have examined them carefully and must say we are in great doubt as to the genuineness of the one in dispute, but we have reached the conclusion that it may be eliminated and the case decided without reference to it.

A consideration of the remaining questions requires some detail of fact. It appears that Gust Luigart had three brothers and two sisters. Fred was married in 1902. He ran a grocery and coffee house in Lexington and owned a number of pieces of real estate of the value of between $20,000.00 and $30,000.00. He was a hard worker, but lived well and does not seem to have increased his estate. During the period from 1908 to 1912 his business dragged, he was in bad health, a part of the time was away from home under the care of physicians and his account at bank was continually overdrawn, though his solvency was never questioned.

On the other hand Gust Luigart was a good business man, was worth $100,000.00 and apparently always had available funds. He and Fred were quite intimate and Fred's store was a sort of headquarters for him, though he had an office elsewhere; he also ate dinner at Fred's house practically every Sunday.

About the year 1912 and at a time when Fred's indebtedness to the bank aggregated $3,500.00 an arrangement was made between the two whereby Gust assumed management of Fred's real estate and Fred confined his activities to the store. This continued up to January, 1915, when some feeling developed and they had a settlement showing Fred indebted to Gust in the sum of $110.85, which amount he paid by check, and then turned over the management of the real estate to his son Joseph, a young man twenty years of age. During Gust's man-

agement there were no overdrafts, the bank's indebtedness was liquidated, and Gust purchased and paid for two houses and lots, one deeded outright to Fred, which he afterward used as a residence, the consideration not being shown. The consideration of the other $1,650.00, was paid by Gust and a one-half interest conveyed to Fred. The feeling mentioned above lasted a few weeks when the old intimacy was fully resumed.

Fred died in the year 1916, his widow qualified as administratrix and Gust assisted her and Joseph in settling his estate and in their business. They asked him in reference to $6,000.00 in waterworks bonds which Fred had told them Gust was holding for him. He told them that this was correct, brought them the bonds and assisted them in depositing them safely. He informed them of an indebtedness due him by Fred of $300.00 and they paid it.

The note in question was found by Mrs. Mollie Luigart about one year after Fred's death. It was in a small tin box, which also contained memoranda of the waterworks bonds and various receipts. The tin box was in a large iron box which Fred used in lieu of a safe. It is not clear why it was not discovered earlier, but it appears that the appraisers of the estate did not enter this box.

All of the parties have testified, but both Gust and Fred seem to have been reticent about their business affairs and none of the witnesses had ever heard of either the bonds or the note except Mrs. Mollie Luigart and Joseph, who both knew of the bonds, but not of the note.

On one occasion Joseph was alarmed at his father's check being dishonored at the bank and the latter told him not to worry that Gust had $6,000.00 of waterworks bonds that he was holding for him, but did not mention the note, and it seems he frequently mentioned the bonds to them.

As to how Fred purchased or acquired the waterworks bonds is a mooted question. He kept an account of all the checks he gave, but it does not appear that he paid for the bonds in this way, and his pressing need of money rather negatives the idea of such large purchases on the outside.

The theory of the appellant is that Gust Luigart took possession of the real estate in 1910 and retained it for five years and that the rentals amounted to from $200.00 to $275.00 per month and that he thereby received a sufficient amount to pay the sums above mentioned, and

also the $6,000.00 in waterworks bonds. This would have required an almost continuous renting of all the property to paying tenants and without any expense for maintenance, insurance and taxes, rather a strong presumption. But the evidence shows that Gust did not take charge of this property until after Fred returned from Mt. Clements, where he had been for his health, in July, 1910.

On direct examination Mrs. Mollie Luigart placed the period of his control at three or four years. The bank books show no change in the conduct of the business until March 5, 1912, and a radical change thereafter, and we conclude that this is the date Gust took charge, and it is manifest that from that period the net rentals earned did not exceed the sums that it is shown he paid out.

Again it is shown that in 1911 Gust had $23,000.00 in waterworks bonds; his inventory books showed that in 1917 he had $17,600.00. Up to the settlement in January, 1915, Gust paid no interest on these bonds to Fred, but he did pay such interest during that year. Fred died and the bonds were delivered in 1916. Also the note with interest from Januray 1, 1906, to January 1, 1915, amounts to $5,872.50, and this with the $110.85 check that day paid Fred equalled the face value of the bonds.

The circumstances above described are competent evidence to be considered on the issue as to a settlement. Marshall v. Marshall, 12 B. M. 459; Newberry v. Winlock's Exrs., 168 Ky. 822, 12 Cyc. 1270; Barnes v. Green's Admr., 12 S. W. 277; McKenney v. Page, 146 Ky. 682.

The question to be determined is whether they are of sufficient force to overcome the legal presumption in favor of the claim; as the note being admittedly valid its possession by the payee raises a presumption of non-payment. Powell v. Swann, 5 Dana 1; 30 Cyc. 1268.

It will be observed that while the evidence is circumstantial it is consistent in its parts and entirely consistent with the theory of payment by an exchange of the bonds for the note. No other way is indicated by which Fred could have paid for the bonds. Their face value equals the amount of the note and check given at the time he and Gust settled. Gust theretofore had over $23,000.00 in bonds, thereafter he had only $17,600.00. Gust was holding these bonds for him but never paid him any interest on them before this settlement, but did there-

after.. Stronger still, the conduct of the parties is inconsistent with the theory of non-payment. Fred while amply solvent was always in need of money. Gust could · have paid at any time, yet for ten years this note ran without even a suggestion of the payment either of principal or interest. During that time Gust frequently paid money for Fred in various ways, but the-latter always · repaid it, never suggesting a credit on the note. Fred turned over his property to Gust to liquidate his indebtedness without reference to the note, although Gust could have paid it at any time and relieved him from all embarrassment. On settlement he owed Gust $110.85; he paid this instead of crediting it on the note; repeatedly he paid Gust other sums in the same way; he prepared his son to take charge of his business and calmed his fears by telling him that Gust was holding $6,000.00 of waterworks bonds for him, but did not tell him of the note, and repeatedly had similar talks with him and his mother, and though reticent, discussed his business with them until they understood it in detail, except as to this note.

The principal actors have passed away, the evidence of their transactions is incomplete and much of it that could have been produced is lost by the non-action of the claimants; doubtless this is to the disadvantage of the exceptors. If we should concede that the well known solvency of Gust and the intimacy of the two brothers would afford grounds to indulge the claimants in their delay, and that the doctrine of laches should not be applied to its full extent, certainly such long continued non-action under such circumstances should be considered with the other facts and has an important bearing on the question of payment.

On the whole case we are of the opinion that the inferences to be drawn from this evidence are so strong as to create a presumption that Fred regarded the waterworks bonds as a reserve to be drawn upon in case of necessity. That Gust procured these bonds and held them for him, that they are closely associated with the note and were either given in exchange therefor, or that the latter was settled in their purchase, and that the chancellor did not err in disallowing the claim.

Judgment affirmed.