## Hardwick's Ex'r v. West.

Jan. 26, 1943.

Kennedy & Kennedy for appellant.

B. J. Bethurum for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

Burl King, a citizen and resident of McCreary county, Kentucky, died January 26, 1917, leaving surviving him several children and descendents, including Lizzie Hardwick and Amanda West, the appellee. Lizzie Hardwick died testate in November, 1940, and the appellant, John M. Perkins, was appointed and qualified as

executor of her estate. Soon thereafter appellee brought this action in the Pulaski circuit court seeking to recover of Perkins, as executor of Mrs. Hardwick's estate, the sum of $500 with interest thereon from the date of the death of Burl King.

The appellee alleged in her petition that a short time prior to the death of her father, Burl King, he left all his surplus money in the hands of Lizzie Hardwick with directions to her to distribute the same equally among his heirs at law; that according to the said allotment of the money as directed by her father, there was left by him in the possession of Lizzie Hardwick as bailee or trustee in trust for the appellee the sum of $500, which was never paid or delivered to her by the bailee but that she continued to hold the same in trust for the benefit of the appellee and that she has been deprived of the said $500 from the time of the death of her father. The appellant moved the court to require the appellee to make her petition more definite and specific, and appellee then amended her petition and alleged that Burl King made her a gift of $500 and delivered same to her sister, Lizzie Hardwick, with directions to her to pay said money to the appellee "as she needed it," and that Lizzie Hardwick died without ever paying to her the said $500 or any part thereof and still owed same at the time of her death; that as a result of the placing of the said $500 in the hands of Mrs. Hardwick by Burl King as a gift to the appellee and the failure of Mrs. Hardwick to pay same to her as she was directed to do by Burl King, and which she agreed to do, her estate is indebted to appellee for said amount, together with interest thereon from the date of the delivery of the money as aforesaid to Mrs. Hardwick. A demurrer to the original petition was filed and overruled before the filing of the amended petition, but the record does not disclose that any demurrer was filed to the petition as amended.

Appellant answered denying the allegations of the petition and pleaded affirmatively in separate paragraphs the statutes of limitation and laches. Appellee's reply consists of a denial of the affirmative allegations contained in the answer, and also made certain affirmative allegations which were controverted of record, thus completing the issues. The cause was transferred to the equity docket and the evidence taken by depositions, and the cause submitted to the chancellor for judgment, and upon

the pleadings and evidence adduced the chancellor granted the relief prayed, to which appellant excepted and prayed an appeal which was granted.

It is insisted that appellee's pleadings and evidence were vague, indefinite, uncertain, and insufficient to establish a parole trust in personal property, since it is the rule that facts constituting the trust must be clearly and specifically alleged in the petition, and if denied must be proved by clear and convincing evidence. We will first consider the evidence and then consider the pleadings in connection therewith.

Susie Chitwood testified that she knew Burl King and Lizzie Hardwick before their respective deaths. She was asked if she ever heard Mrs. Hardwick make any statement in regard to any money that she had in her possession for appellee and, if so, to tell what she said. The witness testified as follows:

"A. Yes sir. She said she had some money for Mandy West and her sister, Martha West, $500.00 apiece, and she said if Mandy was in need why she would, she intended to give hers to her and asked me the question if Mandy could get along very well without that for awhile, and I told her I thought she was up against it, that she had been complaining to me about being broke down and not able to work and she said if I knew that she was in need I would have given her her money. She had laid it back years, that Uncle Burl left it with her.

"Q. Who did she say left this money with her for Amanda West? A. Uncle Burl, her father, left it.

"Q. Was Uncle Burl also the father of Amanda West? A. Yes, sir.

"Q. What did she say about the money on a former occasion when you say that she told you it was left in her care? A. She said that she would have given it to Mandy.

"Q. What did she say about who left it there for her? A. She said Pa left this money in my care to take care of it for Mandy as Mandy was apt to give it out to people in need and destroying it and she was going to keep it to give it to her and was going to give Martha hers.

"Q. Did she say who left it there for her? A. She said her father, Burl King."

The witness first said that she could not remember the date of the conversation but later said that it was about the year 1938. She said this was the last time she talked to Mrs. Hardwick about the matter but before that time she had told her about having the money in her hands for Mrs. West. She was further asked and answerd:

"Q. After you told her Mandy was in need of the money, what did she say? A. She said I will think about it. I told her I wished she would see her and talk with her yourself and she said to tell Mandy this.

"Q. Did she say anything about what Uncle Burl said to her when he left the money with her? A. He told her to keep that money in safekeeping, that he did not like the Wests very well. Her father did not like the Wests, but to keep it and give it to her, to give them their parts."

She said this conversation took place in her yard at Pineknot in McCreary county and that Mrs. Hardwick mentioned the subject herself and asked her about appellee and how she was getting along.

T. J. Swain testified that he knew Burl King and that they lived in the same neighborhood, at one time about three quarters of a mile apart and about six or seven miles apart at the time of the death of Mr. King. He said he had heard Mr. King discuss his money a number of times and that he borrowed money from King at different times, and the last talk he had with him about his money he said "he talked as Lizzie had his money" but he did not remember the exact language used. He further said that Mr. King said that when he needed money he called on Lizzie, that she was taking care of his money. This conversation occurred about seven or eight years before the death of Mr. King. Susan Stephens testified that she was 88 years of age and had known Burl King from her childhood. She was a niece of Mr. King and a cousin of Lizzie Hardwick and appellee. She said that Mr. King talked to her about his money and told her that he had $1,000 for Martha and $1,000 for appellee and that he had put the money in Lizzie's hands. She

could not remember just how long this was before Mr. King died but said that it was "a right smart bit before he died." On cross-examination the witness was asked if she saw Mr. King give Mrs. Hardwick any money and she answered in the affirmative, and further said the money was "big bills in a long poke—he had a poke of silver money too."

Arthur Creekmore testified that about five years ago he went to appellee to borrow some money from her and she told him to come back on another day, that Mrs. Hardwick would be there and she thought she could arrange to have the money. He said that he saw Mrs. Hardwick at appellee's home and had a conversation with her and she told him that she had Mrs. West's money and was intending to keep it and take care of it, that Amanda did not know how to take care of money. He said that Mrs. Hardwick did not say how much money she had belonging to Mrs. West, nor did she state where she got the money, but only said that she had Mrs. West's money. Isaac Chitwood testified that in the year 1938, while he was painting a house for Mrs. West, Mrs. Hardwick came to Mrs. West's home and he heard them talking about some money that their father had left for them and Mrs. Hardwick told Mrs. West that she had $500 that her father left for her and also $500 for their sister Martha. Mrs. Jane Lay, daughter of Susan Stephens, testified concerning what Burl King said about his money and that she saw him take a bag of money out of his trunk, and said that he had his money for his children and that he intended for some of them to take it and take care of it, and said "I guess I will let Lizzie take that money away." James Moore testified that he heard Burl King say that he let Mrs. Hardwick take his money, and said he wanted to be able to give his children $1,000. It appears, however, that this conversation occurred many years before the death of Mr. King.

Mrs. Ether Lewis testified that in the year 1933 or 1934 she went to the home of Mrs. West on some business matter and Mrs. Hardwick came there while she was there on that occasion; that Mrs. Hardwick told Mrs. West that she had decided she would give her her money. Mrs. Hardwick said she had $500 for Mrs. West but did not say where she got the money. She said that Mrs. Hardwick called Mrs. West in the kitchen and counted out $500 and also counted out another $100 and said that

was part of Martha's money; that after she counted out the $500 for Mrs. West she said " 'Mandy will you promise me that you won't give that kid any of this?' and Mandy said 'No, I won't.' ". (Meaning that she would not make the promise requested.) The witness then explained that the "kid" referred to was Leonard West's little two or three year old daughter who was living with Mrs. West. The witness further said that after Mrs. West refused to make the requested promise not to give the little girl any of the money, Mrs. Hardwick then said she would not give it to her and said "I will just keep it and bury you on it," and she then left and as she went through the door she said "Every time I come down here you have got that kid here."

There was no evidence produced for the appellant tending to contradict any of the witnesses for the appellee except by inferences which might be deduced from circumstances. It appears from the evidence of the witnesses for appellant that Burl King died in a destitute condition, leaving no property of any kind. It is insisted for defendant that the testimony of the witnesses concerning the large sum of money that Burl King was at one time possessed of, and that he gave his daughter Mrs. Hardwick $2,000 to hold and distribute to Mrs. West and his other daughter, Martha West, was a "fantastic story." While the evidence might not be highly plausible, yet we can hardly accept that argument since it was shown by a number of witnesses, some of whom were disinterested, that several years previous to Mr. King's death he was possessed of a considerable sum of money. It is not unusual for people to distribute their estates among their children, or place it in trust for them. It appears that Mr. King made this alleged distribution of his money many years before his death, and it is not shown that he parted with all his money. It is also shown that at one time he owned land and other property. We do not think that the fact that Mr. King died without property means necessarily that he never at any time was possessed of any money, or placed in the hands of Mrs. Hardwick any money for the use and benefit of Mrs. West.

Appellant introduced certain witnesses for the purpose of impeaching appellee's witnesses, Mrs. Stephens, Jane Lay, and Mrs. Lewis, for truth and veracity. It was developed on cross-examination of the witnesses

that in the past some of them had been involved in a law suit with appellee's witnesses whom they sought to impeach and that perhaps some ill feeling still existed between the parties. Other impeaching witnesses were interested directly or indirectly in the estate of Mrs. Hardwick and apparently would receive a greater share of her estate if the claim of Mrs. West should be defeated. Another witness who testified on direct examination that Mrs. Lewis' reputation for truth and veracity was bad, did not very well stand the test on cross-examination. After repeated efforts to have him name people who said that Mrs. Lewis' reputation for truth was bad, he finally named certain ones and one of the people named testified in rebuttal that they never had heard Mrs. Lewis' reputation for truth discussed or brought into question, and denied that he had ever discussed her in that regard with the impeaching witness.

It is the established rule that to establish a parol trust the facts constituting the trust must be clearly set forth in the pleadings and proved by clear and convincing evidence. Clemmons v. Moore, 8 Ky. Op. 292; Frazier v. Hudson, 279 Ky. 334, 130 S. W. (2d) 809, 123 A. L. R. 1331; Roche et al. v. George's Ex'r, 93 Ky. 609, 20 S. W. 1039, and cases therein cited. We think that plaintiff's petition as amended clearly set forth facts sufficient to show that Burl King did place a sum of money in the hands of Mrs. Hardwick for the benefit of the plaintiff, and directed her to pay it to the plaintiff at such times as she needed it. It is argued for defendant that the failure of plaintiff to allege in the petition that she needed the money rendered the pleading defective. Conceding, arguendo, that such allegations should have been made, yet, since that question was fully developed by the evidence as though it had been pleaded, we think the evidence cured the alleged defect. It is our view that the pleadings and evidence are sufficient to show that there was a completed trust or obligation created and that Mrs. Hardwick held the money placed in her hands by Burl King as trustee or bailee for the benefit of appellee.

We now come to consideration of the plea of the five-year statutes of limitation, section 413.120, KRS. It is conceded in brief of defendant that the statutes of limitation do not run against an express, continuing trust unless the trustee repudiates the trust and in that event the statute begins to run after repudiation. It is insist-

ed that Mrs. Hardwick, as trustee or bailee of the funds, repudiated the trust when she refused to deliver the money to Mrs. West because she would not promise Mrs. Hardwick that she would not give any of the money to the child who was there in her home. We do not think that this amounted to a repudiation of the trust. It was nothing more than a refusal to pay the money over to Mrs. West unless she agreed to the condition imposed by Mrs. Hardwick. She had no right to impose a condition on the trust not required by the donor. The evidence shows that Mr. King directed Mrs. Hardwick to pay the money over to Mrs. West but did not restrict the use of it to her sole benefit or place other conditions or restrictions thereon. Furthermore, Mrs. Hardwick retained custody of the money, saying she would keep it and use it as a burial fund for Mrs. West. We think the facts negative any idea of repudiation. We find no merit in the plea of limitation.

It is next insisted that Mrs. West was guilty of laches and for that reason her claim, if any she ever had, is now barred. This argument is based upon the fact that Mrs. West knew that Mrs. Hardwick had this money in her hands for her about six years previous to the death of Mrs. Hardwick but failed to assert her claim until after Mrs. Hardwick's death. Of course the statutes of limitation and laches do not go hand-in-hand, and under some circumstances a person may be barred by laches, even though not barred by the statutes of limitation. If the money in question had been due Mrs. West from a stranger the argument of laches might be more persuasive. But, it must be remembered that these women were sisters and for that reason, perhaps, Mrs. West was reluctant to sue Mrs. Hardwick and was hoping she would finally pay the money over to her as directed by her father and the matter would be adjusted in a peaceable manner without having to resort to litigation or other unpleasant action. In Huff v. Byers, 209 Ky. 375, 272 S. W. 897, in discussing a similar question relating to limitations and laches wherein the litigants were members of the same family, it is pointed out that while a suit could have been brought sooner, yet the fact that such was not done evinces a spirit of amity on the part of the parties who delayed bringing the suit and that such delay would not start the running of the statutes of limitation. Laches is closely akin or related to estoppel and for a plea of laches to be available it must be shown that the delay in

bringing an action or otherwise asserting a right, caused the other party to change his position and that his rights have been prejudiced. We are unable to see wherein the failure of appellee to assert her claim within the lifetime of Mrs. Hardwick could have been prejudicial to the rights of Mrs. Hardwick. If Mrs. Hardwick had paid the money over to appellee instead of withholding it, the matter would have been settled without litigation even within the lifetime of Mrs. Hardwick or after her death. It is a fundamental principle of equity that where one of two parties must suffer, even though both be innocent, the burden must be borne by the one who brings about the situation out of which the misfortune arises. We think that under the circumstances Mrs. Hardwick was equally in fault, or more so, in bringing about the delay than appellee.

This brings us to the last complaint insisted on for appellant; namely, the question of interest. The court adjudged the recovery of interest at the rate of 6% from the date of the death of Burl King, which was January 26, 1917. No definite time was fixed by the donor, Burl King, for the payment of money by Mrs. Hardwick to the appellee, but according to the allegations of the amended petition and the evidence, the money was to be paid to appellee as she needed it. There is no evidence conducing to show that appellee made it known to Mrs. Hardwick that she was in need of the money or made any demand therefor. It is true that according to the evidence of one witness Mrs. Hardwick received information from the witness that appellee was in need of the money but Mrs. Hardwick was not bound by neighborhood rumors, since she and appellee lived in the same neighborhood a short distance apart and appellee had every opportunity to make it known to Mrs. Hardwick that she needed the money and to make demand therefor. When Mrs. Hardwick took the money to appellee's home, apparently for the purpose of paying it over to her and then changed her mind and withheld it for the reasons stated above, such was a voluntary act on her part and not on demand or request of appellee. If appellee was in need of the money it was her duty to have made the fact known to Mrs. Hardwick and demand her money, but so far as the evidence shows appellee permitted Mrs. Hardwick to retain the money without making any demand for it or making it known to her that she needed it, nor indeed as much as objected to Mrs. Hardwick re-

taining the money. We do not think that Burl King intended that his daughter, Mrs. Hardwick, the trustee or bailee of the fund, should be charged with interest thereon but only expected her to pay the principal to appellee as she needed it. In the circumstances we do not think that Mrs. Hardwick's estate should be charged with interest on the money at any time previous to the filing of the action, which was the first act on the part of appellee which might be considered as making demand for the money. It is alleged in the petition that appellee filed proof of claim and made demand on appellant, executor, for the money before she filed the action. But, in the complicated circumstances it is obvious that any conservative representative of an estate would be reluctant to pay over the money on a mere exparte proof of claim. And furthermore, if such demand was made no doubt it was a short time before the action was filed.

Wherefore, the judgment is affirmed to the extent that appellee recover of the estate of Mrs. Hardwick the principal sum of $500, and reversed as to the interest, and remanded for proceedings consistent with this opinion.