Florence WEISSINGER et al., Appellants,

v.

P. B. WEISSINGER, Appellee.

Court of Appeals of Kentucky.

March 29, 1957.

Rehearing Denied June 7, 1957.

William Marshall Bullitt, Thomas S. Dawson, Louisville, for appellants.

H. B. Kinsolving, III, Kinsolving & Reasor, Shelbyville, for appellee.

SIMS, Judge.

This is an appeal from the judgment of the Shelby Circuit Court impressing an oral trust on a farm of 293 acres in Shelby County in favor of P. B. Weissinger, subject to a debt of $22,838.13 he owed to the estate of Muir Weissinger. The judgment ordered the master commissioner to sell the property and pay the debt (from which the court cost, including the expense of the sale, would be deducted) and pay the balance of the proceeds to P. B. Weissinger.

As the principal parties have the same surname, for the sake of brevity we will refer to P. B. Weissinger as Phil and to his brother, Muir Weissinger, as Muir.

On June 16, 1922, Phil bought the farm in question from Muir in consideration of transferring to the latter 325 shares of common stock of the Louisville Realty Association, and executing to Muir a series of notes for $15,880, the last of which fell due August 1, 1932. The record shows the stock was worth $140 a share at the time it was transferred to Muir, or $45,-500, which sum with the notes made the purchase price of the farm amount to $61,-380.

Phil and Muir were on intimate terms until this controversy arose. In 1936 times were hard and farmers were making no money. Phil had not paid the interest on the purchase money notes since 1928, and he contends it was agreed between him and Muir that he would make an absolute deed to the farm to Muir but that Phil would continue to live on the place, receive all the proceeds from it, would pay the taxes and insurance, but would not be compelled to pay interest on the purchase money notes. When farm prices recovered Muir was to sell the farm, deduct his debt and pay the balance of the sale price to Phil. On November 21, 1936, Phil and his wife executed an absolute deed of the farm to Muir and on that day Muir wrote Phil this letter:

"You and your wife have today conveyed to me a farm and improvements on the Shelbyville and Mt. Eden Pike, which is in full settlement of all notes and interest or any other indebtedness from you to me.

"The notes are in my box in the Fidelity & Columbia Trust Company and will be delivered to you for cancellation next week.

"I do not desire to make any profit for myself by the sale of this farm, but I do desire that you shall receive whatever sum of money shall be paid for the farm in excess of the amount of your indebtedness to me. Said indebtedness is evidenced by the notes signed by you and the unpaid interest. I believe that within two or three years or possibly sooner, the farm may be sold for a sum in excess of your aforementioned indebtedness.

For this reason I am in no hurry to sell the farm.

"I further desire that you have the use of the farm until I order otherwise, without the payment of any rent or interest. You are to pay all the taxes and insurance on the buildings."

The letter is set out in full, except we have omitted the description it contained of the land by metes and bounds and also Muir's signature.

Phil had possession of the farm under Muir's letter until February 13, 1947, when Muir, who was residing in New York, by a letter of that date turned the farm over to the Citizens Fidelity Bank & Trust Company in Louisville for management and eventual sale. Phil was not informed by Muir that he was going to place the farm in the hands of the bank, and the first he knew of it was when the bank's agent, Mr. Beach Craigmyle, informed him that Muir had put the bank in charge and demanded possession from Phil. On February 15, 1947, Phil wrote Muir, saying he supposed Muir was using good judgment in selling the farm, provided he got what it was worth, which he presumed Muir would, and asked Muir if he was going to carry out his contract as set out in his letter of November 21, 1936. Muir never replied to that letter.

Muir died in August 1952, leaving a will in which his widow and two children, the appellants, were named as his sole devisees. Phil had failed to pay the taxes on the farm in 1940 and 1941 and Muir paid the taxes for those two years and paid all taxes after 1947. It was in that year that Phil's notes were returned to him by Muir.

On April 24, 1953, Phil brought this action against Muir's devisees. The complaint averred it was agreed between Phil and Muir that in consideration of the equity Phil had in the farm that Muir would accept a deed to same and hold the farm in a continuing trust for Phil and sell the farm on a favorable market and pay the proceeds to Phil after deducting what Phil owed him. The complaint also alleged that in consideration of this agreement and in the further consideration of the letter Muir wrote him on November 21, 1936, Phil and wife executed a deed of that date conveying the farm to Muir.

In literary paragraph 12 of the complaint it was averred Muir, unknown to Phil, left a signed statement to the effect that his agreement with Phil was not to be honored. The complaint asked the court to require appellants to produce this paper, which was not testamentary in character. The prayer of the complaint asked the court to impress a trust on the farm in favor of Phil, to order the farm sold and from the proceeds to satisfy his indebtedness to Muir and to pay the balance of the proceeds, together with the cost of this action, to Phil.

The answer denied any trust agreement existed between the brothers and stated there was no consideration for the letter of November 21, 1936. It further averred Phil had not paid the taxes and insurance and had allowed the farm to run down. In answering literary paragraph 12 of the complaint asking that the statement by Muir refuting his agreement with Phil be filed, the pleading set out verbatim what was written on April 5, 1948, on the back of a deposit slip and signed by Muir, wherein Muir stated he revoked the letter of November 21, 1936. The answer further averred a biographical diary, written in Muir's hand, was found in his personal effects after his death. More than three pages of the answer are consumed in quoting from this diary, wherein Muir gave in detail his version of the facts concerning Phil's deeding the farm to him. It was stated therein there was no consideration for the letter of November 21, 1936, and it was through affection he felt for Phil that he allowed him to occupy the farm after Phil conveyed it back to Muir. The last paragraph of the answer quoting from the diary reads:

"I regret that circumstances have compelled me to make any statements derogatory to my brother, but it is important that there should be a record of transactions with him, in the event that he seeks to give trouble, if the farm be sold. Therefore I have stated them in this diary. Today is June 4th, 1952. I was offered $60,000 in cash for the farm several years ago through Craigmyle, farm manager for Citizens Fidelity Trust Co., my agent, and refused. I think that it might be sold for $75,000 due to more inflation."

By an agreed order the diary was to be considered filed and made available to the court upon submission of the case.

By way of counter-claim appellants sought to recover from Phil on a $1,000 note he executed to Muir in 1929 as an application on the interest on the purchase money notes, which interest Phil had paid through 1928. The counter-claim also sought to recover on a $5,000 note Phil executed to Muir on February 26, 1930, to obtain money to buy some grazing cattle. Phil contends the $1,000 note and the $5,000 note were paid and pleaded the statute of limitation, which barred them.

■■ Phil and his wife testified in detail concerning the execution of the deed on November 21, 1936, and concerning the writing of the letter of that date to Phil by Muir. According to them Muir was in a hurry for them to execute the deed and agreed to write the letter on that day, which letter was the consideration for the deed, and they would not have executed it except for Muir's agreement to write the letter. They executed the deed before the letter was actually written due to Muir's hurry, but Muir promised them he would write the letter that day stating they could have the use of the farm without paying rent or interest and that he desired no profit for himself and would sell the farm within two or three years and give them all proceeds over and above his debt. Muir actually wrote the letter

the same day the deed was made and right after it was executed.

Appellants' exceptions to the competency of this testimony under the "dead man's statute" (KRS 421.210, subsection 2) were properly overruled by the trial judge. Ordinarily, a diary is not regarded as an account book and is not admissible as such. 20 Am.Jur. "Evidence" § 942, p. 796. But here the parties by an order agreed that the diary might be considered in evidence. As the answer quoted extensively from the diary dealing with the transactions between the brothers, and as the agreed order admitted it in evidence, it is clear that under KRS 421.-210(2) Phil and his wife were competent witnesses. 70 C.J. "Witnesses" § 477, p. 357; Luigart's Adm'x. v. Luigart's Adm'r., 199 Ky. 98, 250 S.W. 796.

We cannot agree with appellants that appellee brought this incompetent diary into the case by asking for the memorandum which Muir had written on the back of a deposit slip. Appellants themselves pleaded the contents of the diary and then agreed the diary might be introduced.

■ Appellants argue that the letter of November 21, 1936, was a voluntary and gracious gesture from one brother to the other and wholly without consideration. They overlook the fact this letter was written the same day the deed was executed and that the letter plainly expressed the intention of Muir to hold title to the farm for a few years, sell it for a good price, deduct his debt and turn the balance of the proceeds over to Phil. It was testified by Phil and his wife that they would not have executed the deed unless Muir had agreed to write the letter.

We agree with the trial judge that the letter was the consideration for the deed. The established rule in Kentucky is that a continuing trust in real estate may be created by a parol agreement made prior to, or contemporaneously with, the execution of a conveyance, and such trust

does not come within the Statute of Frauds. Moore v. Terry, 293 Ky. 727, 170 S.W.2d 29. The evidence to establish such a trust must be clear and convincing and will be carefully scrutinized since its effect is to destroy paper title. Evans v. Payne, Ky., 258 S.W.2d 919. Here, the evidence was clear and convincing.

■ It is next argued by appellants that appellee was guilty of laches in not bringing suit until April, 1953, when Muir had dispossessed Phil in 1947. However, when Muir took possession of the farm he did not tell Phil he would not carry out his contract with Phil. True, Muir wrote Phil on February 13, 1947, he thought "farm values have reached the peak and mine should be sold." Two days later Phil wrote Muir he supposed Muir was using good judgment, provided he got a good price for the farm, and he presumed Muir would carry out his contract set out in the letter of November 21, 1936. Phil testified Muir never wrote him he was repudiating his contract. Muir never sold the farm despite an offer of $60,000 for it. He seemed to think he could get $75,000 for it but died in 1952 holding title thereto.

The evidence establishes a continuing trust which was never terminated until the death of Muir in 1952. While Phil might have been suspicious that Muir would not carry out his contract, he had no actual word from Muir to that effect. The two men were brothers and had been rather close to each other until this controversy arose. Muir was a lawyer, had been a judge and was eleven years the senior of Phil. It is but natural that Phil did not sue Muir under these circumstances. Muir was as much in fault as Phil in not sooner bringing the matter to a head, hence his estate is in no position to complain of Phil being guilty of laches. Hardwick's Ex'r v. West, 293 Ky. 8, 168 S.W.2d 353. Besides, Muir's estate has not been prejudiced by any delay upon the part of Phil in filing suit, since it was agreed Muir's

diary giving in full his side of the transactions be admitted in evidence. Laches is more than delay. It is negligent delay that causes another to change his position to his detriment. Williams' Adm'r v. Union Bank & Trust Co., 283 Ky. 644, 143 S.W. 2d 297, 301, 131 A.L.R. 1364.

■ Appellants argue because Phil on cross-examination answered in the negative the question "There wasn't any private agreement between you and Muir, outside the letter, was there?", that Phil made a judicial admission that there was no consideration for the letter. With this we cannot agree. In the first place, when it is considered that the deed was made the same day the letter was written, it plainly showed the execution of the deed by Phil and his wife was in consideration of Muir writing the letter. In the second place, the reading of the record convinces us that Phil was an old man when he testified and not too alert mentally. In other places in his testimony Phil stated Muir said he would take a deed to the farm, sell it as soon as prices advanced, deduct his debt and pay the balance over to Phil. It is further testified by Phil that he would not have deeded the farm to Muir without such agreement. We have written that a witness' testimony must be considered as a whole—the direct examination along with the cross-examination—in determining whether he has made a judicial admission fatal to his cause. Thompson v. Marcum, Ky., 249 S.W.2d 139. See Bell v. Harmon, Ky., 284 S.W.2d 812; Sutherland v. Davis, 286 Ky. 743, 151 S.W.2d 1021, for a full discussion on the subject.

The last contention made by appellants is Phil did not carry out the terms of his agreement in that he let the farm and its improvements run down, did not pay the taxes for 1940 and 1941 and the judgment is unconscionable.

No recovery of the unpaid taxes was sought in the pleadings by appellants. Muir never made complaint that Phil was not meeting the terms of his contract and

for that reason he (Muir) did not consider himself bound to perform the contract. There was never a time from 1936 until his death in 1952, that Muir could not have made his debt out of the farm with a considerable balance from the proceeds of the sale going to Phil. Muir in 1948 was offered $60,000 for the farm and refused to sell it. Had Phil breached the contract, Muir could have sold the place and terminated the contract without financial loss to himself. He elected to hold the farm and claim it as his own. In deciding that Muir's estate only had the interest in the farm as set out in Muir's letter to Phil on November 21, 1936, the judgment of the trial judge was not only correct, but it was fair and equitable.

The judgment is affirmed.