## Williams' Adm'r et al. v. Union Bank & Trust Co. et al.

April 26, 1940.

Charles L. Seale, Judge.

646

Marcus C. Redwine, Hugh Riddell and D. L. Pendleton for appellants.

Shumate & Shumate for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming on appeal and reversing on cross appeal.

The appellee, Union Bank & Trust Company, the plaintiff below, on March 5, 1937, filed this petition in equity in the Estill Circuit Court against the personal representative of George B. Williams, and of his widow, Julia C. Williams, and against their heirs-at-law, Thomas Williams and Eleanor Horseman, and their spouses, seeking to quiet its title to a 1/32 oil royalty interest in a large tract of land containing about 2,500 acres in Estill and Powell counties; also, to compel Thomas Williams and his sister, Mrs. Horseman, to account for so much of this royalty as was received by them and to account for such of the royalty as their parents received, within the limits of the value of the estate that they inherited from their parents. Defendants in their answers asserted title to this royalty interest and asked that their title thereto be quieted.

The pleadings are multitudinous, consisting of five amended petitions which necessitated numerous answers and replies; also, many preliminary pleadings are filed, such as general and special demurrers, motions to strike, elect, etc. As we gather from the pleadings, the following issues were raised: (1) The right of the plaintiff to maintain this action in Estill county when the

personal representative qualified in Clark county where all the defendants resided; (2) plaintiff obtained no title to the royalty by virtue of purchasing the land at decretal sale enforcing the mortgage liens against the land, since these mortgages did not specifically mention the royalty, therefore it was not put in lien; (3) plaintiff's right of recovery is limited to five years next before the institution of the suit; (4) plaintiff's acquiescence in allowing defendants and their ancestors to collect the royalty for many years estop it from now asserting title to same, and plaintiff has been guilty of laches; (5) certain lands upon which plaintiff claims the oil royalty are not included in the deeds.

The chancellor sustained defendants' plea of limitation and confined plaintiff's recovery to five years, but decided all other issues adversely to defendants, hence this appeal. We will give a brief statement of facts.

George B. Williams and W. P. Williams were brothers, and in 1915 S. M. Maple and wife conveyed to them a one-half undivided interest in a tract of land in Estill and Powell counties. This conveyance appears to have been lost, and on Sept. 30, 1924, Maple and wife executed to George B. and W. P. Williams a conveyance in lieu thereof, whereby they conveyed to the Williams a one-half undivided interest in a tract of land in Estill and Powell counties described by metes and bounds and which appears to have contained about 2,000 acres. Included in their deed are the Cottage Furnace lands embraced in a circle with a two and a half mile radius. In these lands there was expressly conveyed to the grantees a one-half interest in the one-eighth oil royalty which was reserved under an oil and gas lease the grantors had executed to C. R. Dulin September 13, 1913. Then followed a general description of the Levy Lynch land and the Riddell 300 acres in Estill county, after which there is a recital in the deed that the grantees are conveyed ''said interest as above set out'' in the Lynch and Riddell lands. On the same day this deed was executed to George B. and W. P. Williams, a mortgage to secure a $7,000 note was executed by W. P. Williams and wife to W. B. Williams & Sons, bankers, on ''one-fourth undivided interest in and to the real estate in Estill and Powell counties with the exception the Lunch and Riddell tracts where omitted from the mortgage (here follows same description contained in the

deed) * * * and being the same land one-half interest in which was conveyed to George B. Williams and W. P. Williams by conveyances from S. M. Maple and wife, which same is not recorded." The $7,000 note and mortgage were afterwards duly transferred to the plaintiff. On February 4, 1926, W. P. Williams and wife to secure "money loaned" mortgaged to George B. Williams "all the one, undivided, fourth interest in and to a boundary of land in Estill county * * * known as the Cottage Furnace lands, being the lands embraced in a circle, the radius of which is two and a half miles, being the same property conveyed to the first party by S. M. Maple." It is alleged in a third amended petition, that by oversight or mistake, a description of the Lynch and Riddell lands was omitted from the mortgages executed to Williams & Sons, bankers, O. W. Witt and R. R. Friend, but that these lands were included in the mortgage W. P. Williams executed to George B. Williams. Both the Lynch and Riddell lands are included in the lease from Maple to Dulin.

There were other mortgages executed by W. P. Williams and wife on his one-fourth undivided interest in these lands and, so far as this record shows, no reference was made in any of these mortgages to the 1/32 royalty interest owned by the mortgagor, although oil was then being produced from the land in considerable quantities and the royalty was worth almost as much as the land. Kate C. Ray instituted a foreclosure proceeding on the mortgage she held and named as parties defendant in her suit all other mortgagees. George B. Williams filed his answer, counterclaim and cross-petition asking that his mortgage be reformed to show the amount of money it secured, and prayed that his mortgage be foreclosed and the lands be sold to satisfy his lien. In this foreclosure suit, the court rendered personal judgment against W. P. Williams for the amounts due the various mortgagees, adjudged the priority of liens and directed that the lands described in the judgment be sold to satisfy the liens. The judgment described all the lands sold to W. P. Williams by S. M. Maple including the Cottage Furnace lands in the two and a half mile radius circle, but no mention was made of the royalty interest. The plaintiff bank became the purchaser at the decretal sale paying $5,580 for same, which sale was confirmed and deed was made to the

bank by the master commissioner on October 20, 1931. The specific description in the judgment omitted the Levy Lynch and the Riddell lands, but they were included in the mortgage to George B. Williams, which was foreclosed in the Ray suit, and they were included in the general description in the judgment of the Cottage Furnace lands having a radius of two and a half miles.

This is an action to recover an oil royalty, which we regard as an interest in real estate, as will hereinafter be shown, and was properly brought in the county where the real estate lay. Civil Code of Practice, Section 62; Cox v. Simmerman, 266 Ky. 255, 98 S. W. (2d) 915.

We are confronted with the question of whether a mortgage executed on real estate, from which oil is being produced and in which the mortgagor owns the royalty interest, includes the royalty, where the mortgage makes no mention of royalty. It has long been the law of this State that minerals in place are real estate and such minerals may be severed into distinct estates separate from the surface, Kincaid v. McGowan, 88 Ky. 91, 92, 4 S. W. 802, 9 Ky. Law Rep. 987, 13 L. R. A. 289; Cox v. Colossal Cavern Co., 210 Ky. 612, 276 S. W. 540; Ratcliff's Guardian v. Ratcliff, 242 Ky. 419, 46 S. W. (2d) 504. It was pointed out in Swiss Oil Corp. v. Hupp, 253 Ky. 552, 69 S. W. (2d) 1037, that what is usually termed a coal lease conveys an absolute title to the coal, while the usual oil and gas lease does not convey the absolute title to these minerals, but only gives the lessee the right to explore for them and he does not acquire title to the oil and gas unless it is taken from the ground. However, in Williamson v. Williamson, 223 Ky. 589, 4 S. W. (2d) 392, we held that where a lease only granted the privilege to the lessee to take coal out of the ground during the term of the lease and did not make an absolute conveyance to him of the coal, the royalty retained was a ''species of real estate.'' The Williamson case is exhaustive and cites many authorities in support of the conclusions reached. Arrington v. United Royalty Co., 188 Ark. 270, 65 S. W. (2d) 36, 90 A. L. R. 765, holds an unaccrued oil royalty as reserved in an existing lease is real estate. There is much contrariety of opinion as to whether an oil and gas royalty is real or personal property. A full discussion on the

subject is found in the annotation following the Arrington case from pages 770 to 783 of 90 A. L. R., wherein many authorities on both sides of the proposition are collated. In McIntire's Adm'r v. Bond, 227 Ky. 607, 13 S. W. (2d) 772, 64 A. L. R. 630, we held oil royalty to be an incorporeal hereditament issuing out of land and that unaccrued oil royalty is incident to the reversion and passes with it. Since unaccrued oil royalty is an interest in the real estate, it follows that a mortgage executed on land in which the mortgagor owns both the royalty and the real estate includes the royalty.

The same question we have, to-wit: whether a mortgage on real estate covered the oil royalty therein owned by the mortgagor, was before the Supreme Court of Oklahoma in White v. McVey, 168 Okl. 19, 31 P. (2d) 850, 852, 94 A. L. R. 656, and in holding that the mortgage included the royalty and took precedence over a subsequent transfer of the royalty, the court said:

"It is equally well established that oil and gas in place, so long as they remain unsevered from the soil, are a part of the realty and pass by a conveyance of all the interest and estate of the fee-simple title holder. It would necessarily follow that the execution of a real estate mortgage on said lands would create a lien against the royalty interests, or the minerals in place, at the time of the execution of said mortgage, and that title thereto would be absolute in the mortgagee from and after the date the mortgage was foreclosed by proper proceedings. In the instant case the assignment of said oil runs to plaintiff herein was made subject to the lien of the prior mortgages and upon foreclosure thereof the right of plaintiff to collect said oil runs under his assignment was cut off and the trial court did not err in so holding."

Defendants vigorously argue that as the oil and gas lease severed these minerals from the surface into a separate estate, the mortgage executed by W. P. Williams did not include his royalty. The oil and gas lease here was in the usual form and while it severed these minerals from the surface, we have just said above such a lease was not an absolute conveyance and that the unaccrued royalty was part of the realty. Also, it must not be overlooked that this royalty was reserved by the

original lessor, S. M. Maple, when he executed the lease to Dulin in 1913. Therefore, the royalty was never severed from the surface, but it passed to W. P. Williams as part of the realty when Maple conveyed him the land in which the royalty was reserved.

Defendants' claim to the royalty is through a division order executed to the Cumberland Pipe Line Company by W. P. Williams on May 27, 1929, wherein he directed it to pay his 1/32 royalty interest in the W. S. Raydure wells on the Maple farm to George B. Williams. On October 1, 1931, George B. Williams executed a similar division order to the Pipe Line Company directing it to pay Julia C. Williams, his wife, 1/16 royalty in this same lease. (George owned a 1/32 royalty interest independent of the 1/32 interest covered by the W. P. Williams transfer order.) At Julia C. Williams' death in 1934, defendants inherited from her whatever royalty interest George B. Williams owned in this land. It is argued by defendants that the transfer order executed by W. P. Williams to the Pipe Line Company directing it to pay this 1/32 royalty to George B. Williams is a valid conveyance thereof; that while it is not recorded, plaintiff had actual knowledge of same before purchasing the land in 1931 producing this 1/32 royalty and after purchasing this land it recognized the right to this royalty was in defendants' predecessor in title; that as plaintiff never made any claim to this royalty until it instituted this action in 1937, it is guilty of laches.

The testimony of W. H. Keffer, manager of the Pipe Line Company, is that the rules and regulations of the company require such a division order to be executed so it may have a record showing to whom payments should be made, and we cannot say that such a transfer order operated as a conveyance of the unaccrued royalty. Our opinion is this transfer order merely directed the Pipe Line Company as to what disposition should be made of the proceeds from the sale of the royalty oil. Such a division order is separate and distinct from a conveyance of the royalty, and it is customary for pipe line companies to require such division orders to be executed by all persons owning any interest in the lease. Had W. P. Williams conveyed this royalty to George B. Williams in conformity with Section 494,

Kentucky Statutes, yet the Pipe Line Company would have required a transfer order so its records would show to whom this royalty was payable.

If we should consider this transfer order as sufficient between W. P. Williams and George B. Williams to pass title to the royalty to the latter and should we concede plaintiff had actual knowledge of the execution of the instrument, still George B. Williams did not obtain title to the royalty thereby. Previous to the execution of this transfer order, W. P. Williams had mortgaged this royalty when he mortgaged the land and his subsequent attempted conveyance of the royalty to one of the mortgagees during the pendency of a suit to foreclose the mortgages could not affect the title of the previous mortgage holders. Any title to the royalty obtained by George B. Williams through this transfer order was subject to the mortgages previously executed on the land by W. P. Williams. In that foreclosure suit George B. Williams and all other mortgagees filed their answers and cross-petitions asking that their mortgages be foreclosed on these lands. Various other mortgage holders were parties to that suit and all of them were seeking foreclosure of their mortgage liens. The judgment entered February 19, 1931, directed the mortgaged lands, which included the royalty, to be sold. The property fell far short of bringing enough to satisfy the mortgage liens. The royalty passed to the purchaser of the lands at that decretal sale, and the deed executed by the master commissioner to the purchaser, the plaintiff, conveyed the right, title and interest in these lands of George B. Williams and the other mortgagees.

Plaintiff knew someone was receiving this royalty while it and others held mortgages on the lands which covered the royalty interest, but plaintiff cannot be held guilty of laches because it did not have the proceeds from the royalties applied to the payment of its debt. Nor is plaintiff guilty of laches for not collecting this royalty after it became the purchaser of the lands at the foreclosure sale, because the delay was in nowise detrimental to the defendants. Laches is something more than delay; it is negligent delay which leads another to change his position to his detriment. Kentucky Title Trust Co. v. Weil, 281 Ky. 763, 136 S. W. (2d) 1097. Defendants were not led to change their position and

the only effect of plaintiff's delay in its move to collect this royalty was to allow defendants to collect the proceeds of same to which they were not entitled, and Section 2515, Kentucky Statutes, forbids plaintiff from recovering this royalty for more than five years prior to the bringing of this action. Defendants are not in a position to complain that plaintiff's delay permitted them to enjoy the benefit of this royalty to which they are not entitled.

This is an action to quiet title to this royalty and as both parties are claiming through the same source, W. P. Williams, the controversy narrows down as to which of the two has the better title emanating from the common grantor. Defendants' claim comes alone through the transfer order W. P. Williams executed to the Pipe Line Company on May 27, 1929, directing it to pay the royalty to their father, George B. Williams. We have held that this transfer order did not operate as a conveyance of the royalty, therefore defendants' title falls. The judgment contains a general clause describing part of the lands to be sold at follows:

"That tract of land lying on the waters of Cow Creek White Oak known as Cottage Furnace lands, said lands embraced in a circle having a radius of two and a half (2½) miles and being the same property conveyed to W. P. Williams by S. M. Maple * * *."

The testimony of H. L. Leete shows the Raydure, Lynch and Riddell tracts are embraced in this general description of the Cottage Furnace lands. The master commissioner's deed to plaintiff omitted to include the general clause of description just quoted from the judgment, and defendants contend, since this general description of the Cottage Furnace lands was omitted from the deed, the Raydure, Lynch and Riddell tracts were never conveyed to plaintiff. It is admitted by plaintiff in its third amended petition that by an oversight or mistake the master commissioner's deed did omit the general clause describing the Cottage Furnace lands, and that while it purchased these lands under the judgment and has equitable title to them, it has no legal title, since they are not included in its deed. We agree with plaintiff that it has the equitable title to a one-four undivided interest in these lands from having

purchased them at decretal sale, and as defendants have no title whatever to the royalty in controversy therein, we are compelled to hold plaintiff to be the owner of this royalty.

On cross-appeal plaintiff insists it should be adjudged the royalty amounting to $85.41 from the Beech Rawlins lands. Under the testimony of H. L. Leete locating this Rawlins tract within the two and a half mile circle of the Cottage Furnace lands, we are of the opinion plaintiff is entitled to the royalty from this land the same as it is from the other Cottage Furnace lands, and the chancellor erred in not so adjudging. In its amended petition seeking recovery of the royalty from this Rawlins land, plaintiff states the amount of this royalty is $100, but in the prayer of that pleading the amount of same is left blank. Defendants argue that as the prayer is blank as to the amount plaintiff should recover for this royalty, no recovery can be had on such a pleading. It will be noticed the amount is stated in the body of this pleading, and it is assumed that had defendants moved the court to require plaintiff to fill the blank in its prayer, such motion would have been sustained. A party cannot raise for the first time in this court the failure of his opponent to fill a blank in a pleading. Johnson v. Dodd's Adm'r, 238 Ky. 194, 37 S. W. (2d) 26, 77 A. L. R. 975.

In its fifth amended petition plaintiff asked that it be adjudged a lien upon the one-fourth undivided interest George B. Williams formerly owned in these lands, which he willed to his wife, and which his children, defendants, inherited from her. This action was brought under Sections 2088 and 2089 of Kentucky Statutes, and the latter section expressly gives such a lien and the chancellor should have so adjudged.

Many other questions were raised in the briefs, but a careful consideration of them convince us they are not decisive, and we have foregone a discussion thereof.

The judgment is affirmed on appeal and reversed on cross-appeal.

Whole Court sitting.