**DRURY et ux. v. WALTERS.**
Civ. A. No. 582.

United States District Court,
W. D. Kentucky, Owensboro Division.
Aug. 5, 1954.

W. T. Wathen, Simpson & Ruark, Morganfield, Ky., Woodward, Bartlett & McCarroll, Owensboro, Ky., for plaintiffs.

Wilson & Wilson, Owensboro, Ky., Crain & Hall, Centralia, Ill., for defendant.

SWINFORD, District Judge.

The record is before the court on the motion of Jane Edgar Walters to dismiss the complaint on the ground that the agreement set forth in the complaint between her late husband, Harry Walters, and the plaintiffs, G. I. Drury and Bertha Ann Drury, was not in writing and is therefore unenforceable by reason of the provisions of the Kentucky Statute of Frauds, KRS 371.010.

The facts set forth in the complaint are as follows. On December 21, 1949, the plaintiffs executed and delivered to one Harry Walters (now deceased) an oil and gas lease for a term of ten years covering an undivided one-sixth interest in and to certain real estate belonging to the plaintiffs and more particularly described in the complaint. On December 23 of the same year, the plaintiffs executed and delivered to Harry Walters a deed to an undivided one-sixth interest in the oil and gas underlying the same described property.

In January, 1950, an action was brought against the plaintiffs and Harry

Walters in the Union Circuit Court by one Augusta Summers in which she charged fraud in the procurement of a deed from her to the real estate which had been conveyed from the plaintiffs to Harry Walters. The action in the state court was settled by the payment to Augusta Summers of the sum of $12,000. Of this amount Harry Walters paid one-half and the plaintiffs one-half.

In consideration of the payment of the $6,000 by the plaintiffs, Harry Walters promised and agreed to pay the plaintiffs one-half of the proceeds of the oil and gas produced and marketed from the property. This agreement was not in writing but was recognized by Harry Walters during his life and the complaint sets forth that he paid monthly from December, 1952, until May, 1953, one-half of the amounts received by him for the oil and gas produced from the property.

Harry Walters died testate on July 15, 1952. By the terms of his last will and testament he devised all of his property, including the property involved in this action, to his wife, the defendant, Jane Edgar Walters.

The complaint alleges that the monthly payments were discontinued and that the defendant, Jane Edgar Walters, is now indebted to the plaintiffs in the sum of $11,061.91 which represents a one-half of the royalty of a one-sixth interest for a payment of them from June, 1952, until November, 1953.

The motion raises the clearcut issue of whether or not an oral agreement to pay a portion of money received as a royalty from mineral lands is such an interest in land as to bring it within the Kentucky Statute of Frauds.

In Thornton Oil and Gas, section 76, page 126, we find the following language:

"The royalty is a separate right, created by the lease, and constitutes a consideration for the lease payable in futuro according to the production from the land leased. It is not a part of the land, but is a species of personal property, with the incidents and rights characteristic of personalty."

In support of this text numerous authorities are cited from various states including Collins v. Lemaster's, Adm'r, 232 Ky. 188, 22 S.W.2d 567; Crain v. West, 191 Ky. 1, 229 S.W. 51; Meredith v. Meredith, 204 Ky. 608, 264 S.W. 1109, 1110.

In my judgment the case of Meredith v. Meredith, supra, is directly in point and must control the decision of the court here. In that case one W. E. Meredith died intestate, the owner of a farm of 167¼ acres of land. The land descended to his sons, J. E. and W. R. Meredith, with their mother, Angeline Meredith, having a dower interest. In order to facilitate the operation of the land, the two brothers agreed to a dividing line and made mutual conveyances for the respective tracts allotted to each. Each of the deeds was made with due respect and regard to the life estate of the mother and with the understanding that she had the right to the use and occupancy of the land for her benefit so long as she lived. The division was made with her consent and knowledge. After certain legal proceedings it was judicially determined that there had been no intention on the part of the litigants to have a written agreement as to the division of the royalty which resulted from the development of mineral rights under a lease to an oil company. It was orally agreed between the mother and her two sons that the royalty from the oil rights should be equally divided between them. The court recited in the opinion that the material question was whether the parol agreement to divide the royalty was within the Statute of Frauds. It was held that a promise to pay a certain sum of money or a share of the proceeds of a contemplated sale of land is not within the Statute of Frauds.

The court cited with approval a quotation from 25 R.C.L. 540 and set forth the rule that such a transaction as the one in suit must be treated as a trust and where one party had complied with

his terms of the agreement and such a trust had been recognized by the party to be charged that the transaction was removed from the statute. The following quotation from the opinion decides all the issues raised on this motion:

"The agreement was not a contract for the sale of an interest in the land. It related only to the oil after it had been drawn out of the land by the oil company. The oil after it was separated from the land by the oil company was personalty. The parties by the lease to the oil company passed to it this interest in the land. The royalty is simply the consideration paid by the oil company therefor. A parol contract to make the lease and divide the royalty would be within the statute, being a contract for an interest in the land; but, when the lease is made and the title passes, the parol contract to divide the royalty is simply a contract as to personalty. The proof is in nowise inconsistent with the writing. The lease provides that the royalty is to be paid to the grantors. The parol agreement simply provides how it shall be disposed of by them after they receive it. The agreement is not a contract not to be performed within one year from the making thereof. The statute only applies to contracts which are impossible of performance within a year from the making thereof. West v. King, 163 Ky. 561, 174 S.W. 11. It was possible that all the oil might be drawn out and exhausted within a year."

The rule laid down in Meredith v. Meredith, supra, is recognized in the later decision of Collins v. Lemaster's, Adm'r, supra, where the court in its opinion said:

"It is settled that the widow and remaindermen may join in an oil and gas lease and agree orally or in writing how the royalties are to be apportioned among them."

Many of the cases cited by counsel for the defendant are not available to me. I am therefore in no position to criticize the quotations set forth in the briefs. However, it might be pointed out that excerpts from opinons of courts without a knowledge of the facts on which they were based, when taken out of context, are of questionable value to a court undertaking to apply the rules of law on a definite set of facts. The cases available to me do not appear to be in conflict with the law of Kentucky as stated in the case of Meredith v. Meredith, supra.

In Williams' Adm'r v. Union Bank & Trust Co., 283 Ky. 644, 143 S.W.2d 297, 131 A.L.R. 1364, the question was whether a mortgage executed on real estate from which oil is being produced and in which the mortgagor owns a royalty interest includes the royalty, where the mortgage makes no mention of it. The court following its well-established rule held that the *unaccrued* oil royalty is an interest in the real estate. That case, insofar as this issue is concerned, dealt solely with the question of minerals in place and the ownership by grantors or lessees under written instruments.

United States v. Noble, 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844, was an action to set aside, on the ground of fraud in the procurement, certain leases from a Quapaw Indian as contravening laws imposed by Congress dealing with the restriction in alienation of lands allotted to the Quapaw tribe of Indians. The leases provided for the assignment of rents and royalties to accrue from the development. The case turned primarily upon the limitation on the rights of the lessor to enter into such a contract because of statutory restrictions. It was also expressly stated that the rents and royalties were profits and when they accrued they became personal property. It is not disputed that rents and royalties to accrue are a part of the estate remaining in the lessor. Therefore, any agreement pertaining to them must be held to be within the Statute of Frauds.

I can find no analogy in the case at bar and Williamson v. Williamson, 223 Ky. 589, 4 S.W.2d 392. The quotation set forth in the defendant's brief from

that opinion is the last paragraph of the opinion but must be taken as pronouncements in view of the premises reflected in the facts set forth in the opinion. The facts given disclose that the plaintiff was seeking to determine her rights as a surviving spouse to the royalty accruing under a lease of coal lands.

The same might be said with reference to Browning v. Ashbrook's Ex'r, 175 Ky. 755, 195 S.W. 105, and Carpenter v. Dummit, 221 Ky. 67, 297 S.W. 695. Those cases are not cases involving royalties for mineral property but are dealing with only the definition of the term "proceeds". While the language quoted from the opinions clarifies any misunderstanding of the term, the facts are so different and the application so remote from the issue involved in the instant case that they are of little value as authorities here.

Payne v. United States, 50 App.D.C. 219, 269 F. 871, was an action for a writ of mandamus to require the Secretary of the Interior to pay the parents of minor Indian children money derived as interest from oil and gas and other minerals belonging to the tribe of Indians. The definition of the term "bonus" as being royalty in its strict sense and as used in an Act of Congress throws no light on the question which we have before us. Definitions are of questionable value unless stated in connection with a reasonably similar state of facts.

With reference to the question of the possibility of the performance of the contract within a year, counsel for the defendant, Mrs. Walters, cites Williamson v. Stafford, 301 Ky. 59, 190 S.W.2d 859; King v. McMillan, 293 Ky. 399, 169 S.W. 2d 10; and Cumberland & M. R. Co. v. Posey, 196 Ky. 379, 244 S.W. 770. These cases interpret and apply subsection (7) of KRS 371.010. There is no question but that the rules as set forth by these decisions are well recognized and should be followed in a proper case. I think, however, in the case at bar that the exact question is covered by the opinion in Meredith v. Meredith, supra. Later pronouncements on the rule may be found in the case of Lively v. Elkhorn Coal Company, D.C., 101 F.Supp. 1014, affirmed by the Court of Appeals in 6 Cir., 206 F.2d 396.

Counsel for Mrs. Walters undertakes to explain away Meredith v. Meredith, supra, by stating that the language of the court in holding that a parol contract to make the lease and divide the royalty, being a contract for an interest in land would be within the statute, is "tantamount" to the action in the instant case. I do not think so. There is a distinct difference between a contract to lease land and divide the royalty and a contract for the payment of a certain amount of royalty in consideration for an executed contract between the parties.

There are a number of other questions raised by the pleadings and to which the parties have addressed themselves in briefs. Certain issues are raised by the prayers of the complaint and the amended complaint that should be eliminated before this case goes to trial. As it now appears to the court this case should proceed as an action at law for money due and owing. The prayer for equitable relief is subject to serious question.

Since the motion raises the sufficiency of the complaint in setting forth a cause of action and in view of the fact that I am of the opinion that the complaint sets forth a good cause of action, with a questionable prayer for equitable relief, the motion to dismiss is overruled.

Upon the call of the docket this case should be set down for a pre-trial conference. An order overruling the motion to dismiss and setting the case for a pre-trial conference at a time later to be determined is this day entered.