James E. SMITH, Wallace A. Colyer, G. D. Whitehurst, Frederick R. Stamler, and A. J. Schneider, Appellants,

v.

Florine Mae WEDDING, Executrix of the Estate of Joseph M. Wedding, Appellee.

Court of Appeals of Kentucky.

June 21, 1957.

Robert E. Humphreys, Jr., Humphreys, Jones, Beard & Connor, Owensboro, for appellants.

Harry L. Hargadon, Arnold J. Lemaire, Hargadon, Bennett & Lemaire, Louisville, for appellee.

Jo M. Ferguson, Atty. Gen., Earle v. Powell, Asst. Atty. Gen., amici curiæ.

CAMMACK, Judge.

Joseph M. Wedding was actively engaged in speculative oil ventures from 1951 through 1953. In the course of his activities, he sold to James E. Smith, Wallace A. Colyer, G. D. Whitehurst, Frederick R. Stamler, and A. J. Schneider, the appellants, undivided fractional working interests in oil and gas leasehold estates located in western Kentucky. Wedding later secured additional money from the appellants for their respective proportionate parts of the costs of drilling test wells on each of the leasehold estates here involved. The total amount advanced by the appellants in the several transactions was $79,742.41.

In December, 1953, each of the appellants filed a complaint against Wedding, alleging that each had tendered to Wedding and other sellers represented by Wedding, all their interests in the oil and gas leasehold estates, and that such tender had been refused. They further alleged that the fractional interests constituted securities as defined by KRS 292.010(7), and were not registered with the Director of the Division of Securities as required by KRS 292.120. Relief was sought under KRS 292.220(1), which provides that every sale made in violation of any of the provisions of Chapter 292 is voidable at the option of the purchaser. The cases were consolidated by order of the trial judge and heard upon facts as stipulated by

agreement of counsel. On October 6, 1955, the trial judge dismissed the complaints, and this appeal was taken.

 The only question to be decided is whether an undivided fractional interest in oil and gas leases, commonly called a working interest, constitutes a security as defined by KRS 292.010(7). The statute sets out with some particularity what is to be deemed a security:

" 'Security' means any note, stock, treasury stock, bond, debenture, transferable share, voting trust certificate, evidence of indebtedness, certificate of interest or participation, certificate of interest in a profit-sharing agreement, certificate of interest in an oil, gas or mining lease, royalty or title, collateral trust certificate, pre-organization subscription, any share, investment contract or beneficial interest in or title to property, profits or earnings or any other instrument commonly known as a security." KRS 292.010 (7).

It was stated in Lewis v. Creasey Corporation, 198 Ky. 409, 248 S.W. 1046, 1048, that the term "security" "carries with it the idea that the investor will earn his profit through the efforts of others than his own." The owner of an undivided working interest in an oil lease is a tenant in common of a chattel real. Dempsey v. Diederich, 313 Ky. 865, 233 S.W.2d 976. Unless by the terms of his purchase agreement he gives his privilege to others, he has the right, along with his co-tenants, to explore the property and reduce to possession any oil or gas found. Williams' Administrator v. Union Bank & Trust Company, 283 Ky. 644, 143 S.W.2d 297, 131 A. L.R. 1364. After his purchase of a fractional working interest, he and the other tenants in common finance the cost of drilling, completing and operating the wells and they receive the proceeds from the sale of all oil and gas recovered, subject to payments for the landowners' interest and any overriding royalties there may be. We do not believe, and have not been cited any cases from this jurisdiction which hold, that a working interest falls within the meaning of security as set forth in our statute.

 It is a primary rule of statutory construction that the enumeration of particular things excludes the idea of something else not mentioned. Bloemer v. Turner, 281 Ky. 832, 137 S.W.2d 387. A working interest is not mentioned specifically in KRS 292.010(7), although there is no doubt that in 1926, when the statute was first enacted, it was, as it is now, a common means of financing oil exploration. We conclude that a working interest was not intended by the legislature to be covered by the provisions of the statute.

The appellants and Amici Curiae have cited numerous cases from other jurisdictions which indicate that legislatures of our sister states intended that "certificate of interest in an oil, gas, or mining lease, royalty or title," or similar phrases in their respective statutes, should include a working interest. These are of little assistance in determining the intent of our own legislature. Even should we feel that the phrase as used in KRS 292.010(7) is ambiguous, we would follow the rule of contemporaneous construction and hold that working interests are not securities. See Louisville Trust Co. v. Commissioners of Sinking Fund of City of Louisville, 260 Ky. 219, 84 S.W.2d 30. Since the enactment of the present KRS 292.010(7), countless fractional interests and working interests have been sold, and it is admitted that neither the Attorney General nor the Director of Securities has at any time raised any question as to whether or not the sales came within the statute.

Judgment affirmed.