Johnnie HUMMEL, Jr., and Claudia F. Hummel, Plaintiffs and Respondents,

v.

Curtis D. KRANZ and Gerald L. Metz, d/b/a Kranz Oil Company, Defendants and Appellants.

No. 8081.

Supreme Court of North Dakota.

March 5, 1964.

MORRIS, Chief Justice.

On February 12, 1959, Johnnie Hummel,. Jr. and Claudia F. Hummel purchased from the defendants, doing business as Kranz Oil Company, a working interest in an oil well located in Saskatchewan, Canada, not yet drilled but to be situated on Legal Subdivision number 15 on the North One-half and the Southeast Quarter of Section 22,. in Township 6, Range 9, West of the Second Meridian. The purchase was evidenced by a "Working Interest Agreement" for which the purchasers agreed to pay a stated consideration and

"In return, you are to receive one % of the net proceeds of the oil and gas produced and saved from such well or wells. Net proceeds as used herein shall be the proceeds from the sale of oil and gas, less the payment of royalty to the Lessor and Lessee and the costs and expenses of producing, marketing and taxes on such oil and gas, after the well is completed."

On May 6, 1959, they purchased a similar interest in another well to be located on L.S.D. number 13, and on August 13, 1959, they purchased a third one per cent interest in a well to be located on L.S.D. number 9. For all three interests the Hummels paid to the Kranz Oil Company $3,125.

This action is brought to have the purchases adjudged to be rescinded and null and void under the provisions of Section 10–04–17, NDCC, on the ground that the three instruments evidencing the sales and designated as :"working interest agreement" were securities as defined by Section 10–04–02, paragraph 12, NDCC, were not exempt from the provisions of the State Securities Act (Chapter 10–04, NDCC), and were never registered with the Securities Commissioner of North Dakota as the Act required. The plaintiffs seek to recover judgment against the defendants for the amount paid for the securities, plus interest, attorney fees and costs.

It is pleaded and appears from the evidence that the plaintiffs, on March 7, 1961,

Max D. Rosenberg, Bismarck, for plaintiffs and respondents.

Joseph P. Stevens, Minot, for defendants and appellants.

caused to be served upon the defendants a notice of rescission, one of the grounds therefor being the failure of the Kranz Oil Company to register the working interest agreements as securities with the North Dakota Securities Commissioner. The defendants answered, pleading a general denial and alleging as an affirmative defense that on June 22, 1960 they made an offer in writing to take back the securities in question and to refund the full amount paid by the purchasers, together with interest at the rate of five per cent per annum, less the amount of any income from the securities received by the plaintiffs, and that the plaintiffs refused to accept the offer within 30 days.

The case was tried to the court without a jury. The court determined in its findings of fact and conclusions of law that the defendants had sold to the plaintiffs the three working interests which we have heretofore described, that on March 7, 1961, the plaintiffs served a written notice of rescission, that the plaintiffs have at all times been willing to restore to the defendants everything of value received from them, but that the defendants have refused and still refuse to restore the purchase price to the plaintiffs. The court also concluded that the working interests sold to the plaintiffs were securities required to be registered, that they were not registered, and that the plaintiffs are entitled to judgment for $3,125, plus interest, and attorney fees of $450. Judgment was ordered and entered pursuant to the findings and conclusions of the court. The defendants appealed and have demanded a trial anew in this Court.

There are two issues presented by this appeal. The first issue is whether the three documents, each entitled "working interest agreement" and each of which purported to transfer to the plaintiffs a one per cent interest in the net proceeds of oil and gas produced and saved from an oil well, were securities that were required to be registered as such with the State Securities Commissioner by the Securities Act of North Dakota. The second issue is that raised by the affirmative defense which presents a question as to whether the three defendants doing business as Kranz Oil presented to the plaintiffs an offer in writing on or about June 22, 1960, offering to take back the securities in question and refund the amount paid therefor.

■ Our statutory definition of a security includes "certificate of interest in oil, gas, or other mineral rights." Section 10–04–02, paragraph 12, NDCC. The Federal Securities Act of 1933, as amended, includes in its definition of securities "fractional undivided interest in oil, gas, or other mineral rights," which has been held to include fractional working interests in existing or proposed oil wells at least to the extent of embracing certificates or agreements entitling the purchaser to reap rewards without effort on his part or participation in the actual production under the lease which is to be carried on through the efforts of others. Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88; Securities and Exchange Commission v. W. J. Howey Company, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244; Roe v. United States, 5 Cir., 287 F.2d 435; Moses v. Michael, 5 Cir., 292 F.2d 614.

■ In this case each working interest agreement provided that the consideration paid by the purchaser was as a part payment of the cost and expense of drilling an oil and gas well, and stated,

"For the consideration herein expressed, Kranz Oil agrees to drill an oil and gas test well upon the premises to 100 feet into the Frobisher beds, or to 4700 feet or to commercial production, whichever is the lesser."

It is clear to us that the working interest agreements sold to the Hummels were securities and subject to registration with the North Dakota Securities Commissioner.

The appellants cite Smith v. Wedding, Ky., 303 S.W.2d 322, which held that an

undivided working interest in an oil lease did not constitute a security under the Kentucky statute which was similar to ours. In that case, however, the working interest involved was entirely different from the interest purported to be conveyed to the purchasers in the case before us. For that reason we do not consider the Kentucky case to be applicable authority.

We now consider the affirmative defense wherein the defendants claim that they made an offer in writing to take back the securities in question pursuant to the provisions of Section 10–04–17, NDCC, the pertinent parts of which provide:

"Every sale or contract for sale made in violation of any of the provisions of this chapter, or of any order issued by the commissioner under any provisions of this chapter, shall be voidable at the election of the purchaser. * * *

"2. That no purchaser shall claim or have the benefit of this section if he shall have refused or failed to accept, within thirty days from the date of such offer, an offer in writing of the seller to take back the securities in question and to refund the full amount paid by such purchaser, together with interest on such amount for the period from the date of payment by such purchaser down to the date of repayment, such interest to be computed: * * *."

The defendants contend that they made an offer in writing as above provided which was not accepted within 30 days, that the plaintiffs are now bound by their purchase of the working interests herein involved, were not entitled to rescind after the 30 day period had expired, and cannot now maintain this action to recover the purchase price of the securities.

The first working interest agreement begins:

"Received of Johnnie Jr. & or Claudia F. Hummel of Mott, North Dakota,

the sum of $650.00 Dollars, as part payment of the cost and expense of drilling an oil and gas well * * *."

The other two are similar. Claudia F. Hummel was present when all three working interest agreements were entered into. The defendant Gerald L. Metz was the salesman in each instance. The conversations which resulted in the sales of the agreements took place between the plaintiffs and Metz at the farm home of the plaintiffs. The sales were made between February 12, 1959 and September 17, 1959, inclusive. During the early part of June 1960, Metz again appeared at the Hummel home and asked the plaintiffs to execute assignments of their working interests for shares of common stock in a corporation known as Royal American Petroleum, Inc. The plaintiffs declined to execute the proffered assignments. On June 22, 1960, the three defendants drove into the Hummel farmyard. On their invitation Johnnie Hummel entered the defendants' car, where they sat and talked for some time. The defendants proposed to Hummel that he exchange the working interests in the oil well for corporation stock. He refused. During the course of the conversation Hummel got out of the car twice and immediately re-entered it on the solicitation of the defendants. They testify that before he left the car the last time a written offer signed by the three defendants was handed to Hummel, offering to take back his fractional working interests and offering to pay him the full purchase price, in compliance with the provisions of Section 10–04–17, NDCC, above-quoted. Hummel flatly denies that such offer was ever tendered to him and testifies that the first time he saw the offer or copy thereof was during the first day of the trial. There is no evidence that such offer was ever made to Mrs. Hummel, and she was not present when the alleged offer was made to her husband.

We need not resolve the conflicting testimony as to whether an offer in writing

was actually made by the defendants to take back the fractional working interest which they had sold to the plaintiffs and which they testify was handed to Johnnie Hummel, Jr. The controlling question is whether such an offer in any event would satisfy the statute when it was not made to Mrs. Hummel. The answer involves the significance of "& or" as used in the working interest agreement. The use of that phrase frequently leads to confusion, as is indicated by the numerous cases involving it and cited under the subject "AND/OR," Words and Phrases, Permanent Edition, Volume 3, page 640.

■ The expression "and/or" may mean either *and* or *or* when used in a contract. Longacre v. Knowles, Mo., 333 S.W.2d 67. Its interpretation should be the one that will best effect the purpose of the parties as gathered from the contract, and that in turn will be affected by the equities of the case. Bobrow v. United States Casualty Co., 231 App.Div. 91, 246 N.Y.S. 363.

In State v. Dudley, 159 La. 872, 106 So. 364, the court discussed the expression "and/or" and said:

"When used in a contract, the intention is that the one word or the other may be taken accordingly as the one or the other will best effect the purpose of the parties as gathered from the contract taken as a whole. In other words such an expression in a contract amounts in effect to a direction to those charged with construing the contract to give it such interpretation as will best accord with the equity of the situation, and for that purpose to use either 'and' *or* 'or' and be *held down to neither*."

See also Putnam v. Industrial Commission, 80 Utah 187, 14 P.2d 973; Jones v. Servel, Inc., Ind.App., 186 N.E.2d 689; Black's Law Dictionary, Fourth Edition, page 112.

■ The problem here is to determine whether Claudia F. Hummel, named in the working interest agreements, is a purchaser within the meaning of the provisions of Section 10–04–17, NDCC, and as such was required to be presented with an offer in writing by the seller of the securities in question in order to make effective an offer made pursuant to paragraph 2 of that Section. Among the precepts of equity is the maxim that equity follows the law, but there are occasions when equity must walk beside the law and point the way. This is such an occasion. The privilege afforded to the seller by Section 10–04–17, NDCC, to require by offer in writing that the purchaser accept a refund of the purchase price of securities within 30 days is a privilege of rescission. The remedy thus afforded is equitable in its nature. In this transaction equity requires that the phrase "& or" as applied to Johnnie Jr. and Claudia F. Hummel be considered in the conjunctive, thus rendering both of these parties purchasers, to each of whom the sellers of the securities were required to present an offer in writing in order to render effective the rescission provision of that Section. Since the record shows an absence of the presentation of such an offer to Claudia F. Hummel, the attempt of the sellers to comply with Section 10–04–17, paragraph 2, NDCC, was futile and unavailing. The working interest agreements were not rescinded by the sellers.

■ The securities having been sold in violation of the provisions of Chapter 10–04, NDCC, and the plaintiffs having elected to treat the purchases as void, the defendants remain jointly and severally liable to the plaintiffs for the full amount paid by the plaintiffs, together with interest, taxable costs and reasonable attorney fees under the provisions of Section 10–04–17, NDCC, pursuant to which the trial court rendered judgment in this action. The judgment is affirmed.

STRUTZ, TEIGEN, BURKE and ERICKSTAD, JJ., concur.